STATE OF NORTH CAROLINA v. WILLIE ERIC PORTER

No. 22A94

(Filed 2 June 1995)

**1. Criminal Law § 427 (NCI4th)— prosecutor's statements during closing argument—not comments on defendant's failure to testify**

The prosecutor's reference in his closing argument in a trial for arson and three murders to when defendant "comes and tries to hide" was not an improper comment on defendant's failure to testify but was a reference to defendant's attempt to escape from the scene of the crimes and to avoid the police. Moreover, the prosecutor's statement that only the three victims and the perpetrator knew exactly what happened inside the mobile home was the statement of a truism and not a comment on defendant's failure to testify, and his statement that "you haven't heard anything about any accident" was merely a permissible comment on defendant's failure to produce evidence and not a comment on defendant's failure to testify.

**Am Jur 2d, Trial §§ 577-587.**

**Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723, supp sec. 1.**

STATE v. PORTER

[340 N.C. 320 (1995)]

2. **Criminal Law § 496 (NCI4th)— jury question about evidence—no evidence on point—no discretion to review evidence**

Where the jury sent the trial judge a question as to what time of day defendant's car was spotted by the police, but no direct evidence had been introduced on this point, the trial court could not exercise its discretion as to whether to allow the jury to review evidence on this point, and the trial court did not err by instructing the jurors that it could not answer their question and that they must rely on their own recollection of the evidence. N.C.G.S. § 15A-1233(a).

**Am Jur 2d, Criminal Law §§ 918 et seq.**

3. **Criminal Law § 398 (NCI4th)— instruction to alternate juror—no expression of opinion**

The trial court's instruction to an alternate juror in a capital case, in the presence of the twelve jurors who decided the case and just before they retired to deliberate, that the alternate must remain available because he might be needed further did not constitute an expression of opinion that the evidence justified verdicts of guilty of first-degree murder which might necessitate the alternate juror's presence at a capital sentencing proceeding. N.C.G.S. § 15A-1222, 15A-1232.

**Am Jur 2d, Criminal Law §§ 918 et seq.**

4. **Homicide § 476 (NCI4th)— instructions—intent to kill—consideration of nature of assault—evidence of assault**

There was sufficient evidence of an assault upon three murder victims to support the trial court's instruction that the jury could consider "the nature of the assault" on the issue of intent to kill where the evidence tended to show that defendant had previously threatened the occupants of a mobile home; defendant poured a large amount of gasoline into the mobile home, which was heated by kerosene space heaters; the gasoline ignited; defendant was seen exiting the smoking mobile home with his clothes on fire; and the mobile home then exploded into flames. The intentional pouring of a large amount of a highly volatile and flammable liquid such as gasoline into living quarters heated by kerosene space heaters certainly would have put a person of reasonable firmness in fear of immediate personal injury.

**Am Jur 2d, Criminal Law §§ 918 et seq.**

**5. Criminal Law §§ 574, 879 (NCI4th)— deadlocked jury— requiring jury to deliberate further—length of deliberations—denial of mistrial—verdict not coerced**

The trial court in a prosecution for arson and three counts of first-degree murder did not err by denying defendant's motions for a mistrial based on the jurors' reports that they were deadlocked and on the length of deliberations and did not coerce a verdict by giving the jury additional instructions where the jury began deliberating on Thursday at 3:00 p.m.; the jury recessed from Friday afternoon until Monday; the jury foreman reported at midmorning on Monday that the jury was deadlocked; the trial court directed the jury to continue to deliberate without giving the instructions contained in N.C.G.S. § 15A-1235(a) and (b); before the lunch recess on Monday, the foreman told the court that, although the jurors had not reached a unanimous verdict, they were "going to continue one more time"; after lunch, the trial court instructed the jury in accord with § 15A-1235(a) and (b); the trial court inquired later on Monday afternoon whether further deliberations would be worthwhile, and after being informed that progress was at a standstill, asked the jury to return to the jury room to consider whether additional deliberations would be fruitful; the jury returned after ten minutes and responded that further deliberations were worthwhile; the jury reached some verdict or verdicts by the end of the day but did not reach verdicts as to all charges; after an overnight recess, the jury deliberated for an hour and ten minutes on Tuesday and returned verdicts finding defendant guilty of all charges; the jury deliberated over four days for a total of fourteen hours and twenty minutes; and nothing in the record suggests any expression by the trial court that it was displeased with the jurors and would hold the jury until it reached a verdict.

**Am Jur 2d, Trial §§ 573 et seq.**

**6. Criminal Law § 881 (NCI4th)— deadlocked jury—court's statements not coercive**

The trial court's statements that "we've got all the time in the world" and "we've got all week" did not convey the meaning that the court would force the jury to deliberate until a verdict was reached, no matter how long it took.

**Am Jur 2d, Trial § 1602.**

7. **Criminal Law § 876 (NCI4th)— deadlocked jury—further deliberations—discretion not to give statutory instructions**

It was within the trial court's discretion to require the jury to deliberate further without giving the instructions contained in N.C.G.S. § 15A-1235(a) and (b). N.C.G.S. § 15A-1235(c).

**Am Jur 2d, Trial §§ 1054 et seq.**

8. **Criminal Law § 572 (NCI4th)— motion for mistrial—length of deliberations—time required for evidence not considered**

The trial court did not err by denying defendant's motions for a mistrial based on the jury's deliberations for four days when only two days were used for the presentation of evidence, since no rule will be adopted as to how long the jury should be allowed to deliberate based on the time required for the State to present evidence. Rather, it is left to the discretion of the trial court to decide if jury agreement as to a verdict is reasonably possible. N.C.G.S. § 15A-1235(d).

**Am Jur 2d, Trial §§ 1493 et seq.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by Griffin, J., on 2 July 1993, in the Superior Court, Hertford County, sentencing defendant to four consecutive sentences of life imprisonment for three counts of first-degree murder and one count of first-degree arson. Defendant's motion to bypass the Court of Appeals on the arson conviction was allowed 12 October 1994. Heard in the Supreme Court on 10 January 1995.

*Michael F. Easley, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant, Willie Eric Porter, was tried capitally upon proper indictments for first-degree arson and for three counts of first-degree murder at the 21 June 1993 Criminal Session of Superior Court, Hertford County. The jury returned verdicts finding defendant guilty of first-degree arson and guilty of three counts of first-degree murder

on the basis of premeditation and deliberation and under the felony-murder rule.

At the end of the capital sentencing proceeding, the jury recommended a sentence of life imprisonment for each of the three first-degree murder convictions. The trial court imposed sentences of life imprisonment for the three murders and a fourth sentence of life imprisonment for first-degree arson. All of the sentences are to be served consecutively. Defendant appeals to this Court as a matter of right pursuant to N.C.G.S. § 7A-27(a) from the judgments in the murder cases. His motion to bypass the Court of Appeals on his appeal from the judgment in the first-degree arson case was allowed by this Court on 12 October 1994.

The evidence presented at defendant's trial tended to show the following: Mr. Clifton Lassiter lived in Wise's Mobile Home Park in Murfreesboro and dated Ms. Dorothy Porter, defendant's mother. Mr. Lassiter was blind and was aided by Ms. Porter. On 6 February 1992 Minnie Fleetwood, a neighbor, took Mr. Lassiter and Ms. Porter to the grocery store in Mr. Lassiter's car. Ms. Fleetwood then took them back to Mr. Lassiter's mobile home, where they put away the groceries. Defendant and Ms. Daphine Boone arrived, and defendant asked Ms. Porter for money. When his mother told him she did not have any money, defendant began cursing and insulting her. He then took off one of Ms. Porter's shoes and used it to beat her on the head. Ms. Porter pled with her son to stop. He stopped and threw the shoe out the door of the mobile home. When his mother asked him to return the shoe, defendant went outside, brought the shoe in, and threw it at her. At this point Ms. Fleetwood left the trailer because of "the way [defendant] was beating on . . . his mother and the way he cursed God." It was approximately 8:30 p.m.

Although the testimony was unclear at trial as to the precise sequence of events, witnesses testified that defendant continued to quarrel with Ms. Porter and Ms. Boone. At one point defendant kicked open the front door. This action prompted Mr. Lassiter to pick up a knife and chase defendant out of the mobile home. Mr. Lassiter, being blind, was assisted in his efforts by Ms. Boone. After being chased out of the mobile home by the knife-wielding Mr. Lassiter, defendant apologized. However, when hostilities again arose, defendant left, saying, "[T]hat's all right, I'll be back . . . . I'll get your ass."

Later that evening Mr. Eugene Ely and Mr. Dale Hicks were driving home after a night of bowling with Mr. Hicks' sister and a friend.

Mr. Ely saw defendant's car parked beside the road with the hood open as Mr. Hicks turned his car into the mobile home park. The defendant's car door was open, and he was standing by it with a white five-gallon plastic pail beside him. The pail was filled with a liquid, some of which had spilled on the ground.

Mr. Hicks drove through the mobile home park to take his sister to her mobile home. After they stopped, Mr. Ely saw defendant running out the door of Mr. Lassiter's mobile home. Defendant's back was on fire, and black smoke was coming from the mobile home. Defendant ran toward his car, but stopped, dropped, and rolled to extinguish the fire on his back. As defendant was rolling on the ground, Mr. Lassiter's mobile home burst into flames. The windows blew in as the fire consumed the front of the mobile home. The fire was reported to police at 11:30 p.m.

After extinguishing the fire on his back, defendant jumped up and got in his car. Mr. Ely attempted to stop defendant by grabbing the handle of his car door, but defendant pulled away at a high rate of speed. Defendant drove further into the mobile home park and then turned his car around and drove past the fire for a second time. This time Mr. Hicks attempted to thwart defendant's escape by hurling a brick at his car; other witnesses shouted for defendant to stop. Undeterred, defendant drove out of the mobile home park.

After the fire was extinguished, Mr. Ely and Mr. Hicks showed Officer Rodney Pennington, a sergeant of the Hertford County Sheriff's Department, where the plastic bucket had been placed and the location of the spill. All three agreed that the spilled liquid smelled like gasoline.

Dennis Honeycutt, special agent with the State Bureau of Investigation, entered the burned mobile home. Most of the fire damage had occurred in the center of the structure. The bodies of Ms. Dorothy Porter, Mr. Clifton Lassiter, and Ms. Daphine Boone were located in the living room of the mobile home. All three victims had died from fire inhalation, and their bodies were badly burned. Although kerosene heaters were used to heat the home, the tanks which held the fuel were intact and had not ruptured. None of the heaters were in the area of the point of origin of the fire.

At approximately 5:00 a.m. on 7 February 1992, Officer Pennington was dispatched from the scene of the fire to investigate a report that defendant's car had been seen in a ditch along the side of

a dirt road not far from the mobile home park. When Officer Pennington found the car, defendant was sitting in the front seat. The car's front right tire was flat, and a bumper jack had been applied to the car. The officer did not testify as to the time when he found defendant.

Subsequent laboratory tests of carpet and debris samples taken from the living area of the mobile home revealed the presence of gasoline. The tests showed that the defendant's sweatshirt and shoes also bore trace amounts of gasoline.

Defendant presented no evidence during the guilt-innocence phase of the trial.

[1] In an assignment of error, defendant argues that the trial court committed reversible error by overruling his objection to the prosecutor's reference to his decision not to testify. During closing arguments, the prosecutor argued:

> Using your own reason and your own common sense, ladies and gentlemen of the jury, I submit to you, when you go back to the jury room that you will find the defendant guilty of first degree murder on the basis of malice . . . . No accident, ladies and gentlemen of the jury, that he came up and did what he did in the way that he did, cold, calculated murder.

> And then when he comes, ladies and gentlemen of the jury, *when he comes and tries to hide,* that's no accident. And you haven't heard anything about any accident.

> Ladies and gentlemen of the jury, *the evidence* in this case is *there are only three folks that can tell what happened, you know what, those three folks are dead and the person who did it.*

> You know what happened before and you know what he did afterwards, and ladies and gentlemen of the jury, that's what the evidence is in this case.

(Emphasis added.) At this point, defendant objected and moved to strike. The trial court overruled the objection. The prosecutor then resumed his argument that "the evidence is uncontradicted."

On appeal the defendant contends that the prosecutor's argument deprived him of rights guaranteed by the Constitution of North Carolina. Article I, Section 23 of the Constitution of North Carolina states that a defendant in a criminal case cannot "be compelled to

give self-incriminating evidence." N.C. Const. art. I, § 23. This pro-
scription is mirrored in N.C.G.S. § 8-54, which provides that a defend-
ant in a criminal trial cannot be compelled to testify or "answer any
question tending to incriminate himself." N.C.G.S. § 8-54 (1986). Even
before the Supreme Court of the United States held in *Griffin v.
California*, 380 U.S. 609, 14 L. Ed. 2d 106, *reh'g denied*, 381 U.S. 957,
14 L. Ed. 2d 730 (1965), that a reference to a defendant's failure to tes-
tify violates the accused's constitutional right to remain silent, this
Court held that N.C.G.S. § 8-54 prohibited comment on a defendant's
failure to testify. *See, e.g., State v. Humphrey*, 186 N.C. 533, 120 S.E.
85 (1923).

We have stated that "the purpose behind the rule prohibiting com-
ment on the failure to testify is that *extended reference* by the court
or counsel concerning this would nullify the policy that the failure to
testify should not create a presumption against the defendant." *State
v. Randolph*, 312 N.C. 198, 206, 321 S.E.2d 864, 869 (1984) (emphasis
added). In *Randolph*, we emphasized the fact that "[a]ny reference to
the failure to testify was so brief and indirect as to make improbable
any contention that the jury inferred guilt from the failure of defend-
ants to testify." *Id.* at 206, 321 S.E.2d at 869-70. We have emphasized
that "[a] prosecutor violates [this rule] if 'the language used [was]
manifestly intended to be, or was of such character that the jury
would naturally and necessarily take it to be[,] a comment on the fail-
ure of the accused to testify.' " *State v. Rouse*, 339 N.C. 59, 95-96, 451
S.E.2d 543, 563 (1994) (quoting *United States v. Anderson*, 481 F.2d
685, 701 (4th Cir. 1973), *aff'd*, 417 U.S. 211, 41 L. Ed. 2d 20 (1974)).

In the present case, the prosecutor's argument did not exhibit a
manifest intent to comment on defendant's failure to testify. The pros-
ecutor's meaning when using the words "tries to hide" is not
absolutely clear, but it seems to have been a reference to defendant's
ill-planned and ill-fated escape from the scene of the fire. In no way
can we conclude that "tries to hide" must be construed as an
extended reference to defendant's failure to testify rather than a ref-
erence to his attempt to escape and avoid police.

The defendant contends that the instant case is on all fours with
*State v. McLamb*, 235 N.C. 251, 69 S.E.2d 537 (1952). In *McLamb*,
defendant also did not testify, but his wife and three other women did.
During his closing argument, the prosecutor said that defendant was
"hiding behind his wife's coat tail." This Court held that the statement
was "tantamount to comment on his failure to testify" and awarded a

new trial. *Id.* at 257, 69 S.E.2d at 541. In *McLamb*, the contested statement could have had no other meaning than that defendant was relying on his wife's testimony to present his case rather than testify himself. However, in the case *sub judice*, "tries to hide" has a literal meaning in the context of the evidence presented; defendant fled and tried to hide after the fire to avoid apprehension by the police. Consequently, except for the similarity of the contested phrase itself, the two cases are distinguishable.

We also conclude from the evidence presented in this case that the prosecutor's statement that only the three victims and the perpetrator knew exactly what happened inside the mobile home simply was the statement of a truism, i.e., when only four people are present at an event, only those four people can know exactly what happened. This comment did not prejudice the defendant. To the contrary, the prosecutor's comment underscored the fact that if the defendant was not the perpetrator, he would not know what had happened, and his failure to testify would be entirely consistent with his innocence. Finally, with regard to this assignment, we note that the prosecutor's statement that "you haven't heard anything about any accident" was merely a permissible comment on the defendant's failure to produce evidence. *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986). For the foregoing reasons, we conclude that this assignment of error is without merit.

**[2]** Defendant also assigns error to the trial court's failure to exercise its discretion in determining the proper response to a question asked by the jury during its deliberations. Following the trial court's jury instructions, and after an hour and fifteen minutes of jury deliberations, the trial court informed counsel that the jury had a question. Addressing the parties, the trial court said:

I have brought y'all back in because Mr. Twine [the bailiff] came into chambers and said that the jury had handed him a note. And I have just unfolded it and looked at it, and it asks a question about what some of the evidence showed.

And I quote, I'm going to make this Court's Exhibit Number 1 and put it in the record. "What time of day was the defendant's car spotted by police?"

I don't guess there's any way of answering that question, I'll just have to tell them to rely on their recollection of the evidence.

Mr. Twine, bring the jury in.

STATE v. PORTER

[340 N.C. 320 (1995)]

Before you do that, I don't think—I don't think it's any practical way to go back and fish this—let them hear some transcript of the—I believe there is no practical way to do it with this particular question.

Anyway, bring the jury back.

(JURY RETURNS TO COURTROOM.)

Members of the jury, I have received your question and have brought you back in to tell you I'm not able to answer it. I will just have to instruct you to be guided by your own recollection of the evidence, y'all have heard it and we don't have any practical way to do that and it would be inappropriate obviously for me to undertake to tell the jury anything about what the evidence is since y'all are the sole judges of the weight and the credibility of the evidence.

So I'll just have to ask you to be guided by your own recollection of the evidence with regard to this matter. You may retire and continue your deliberations.

At this point, the jurors returned to their deliberations.

Defendant contends that the trial court in the instant case erred by failing to exercise its discretion. We disagree.

The decision to grant or deny a jury request for a review of evidence is committed to the discretion of the trial court. N.C.G.S. § 15A-1233(a) (1988); *State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985). We have held that the trial court errs where it does not exercise its discretion in determining whether the jury should be allowed to review the evidence introduced at trial. *Ashe*, 314 N.C. 28, 331 S.E.2d 652. However, we conclude that this principle has no applicability here.

In the present case, the trial court read the jury's question into the record. Then the trial court stated, "I don't guess there's any way of answering that question." Before summoning the jury, the trial court concluded that "there is no practical way" to answer the jury's inquiry. When the jurors were brought back into the courtroom, the trial court instructed them that it could not answer their question and that they must rely on their own recollection.

Although one witness, Officer Pennington, testified that he was dispatched at approximately 5:00 a.m. to go to Rural Paved

Road 1300, where defendant and his car were located, the officer did not testify at what time he actually first encountered defendant's car or who first saw the car. The transcript is devoid of any testimony as to exactly when the police first saw the car. Therefore, the jury's question related to a point for which no direct evidence had been introduced. The trial court could not exercise its discretion as to whether to allow the jury to review evidence on a point, when no such evidence had been introduced. The trial court did not err in its ruling, and this assignment of error is without merit.

[3] In another assignment of error, defendant contends that the trial court committed reversible error by instructing an alternate juror, in the presence of the twelve jurors who decided his case and just before they retired to deliberate, that the alternate must remain available because he might be needed further. Specifically, the trial court said:

> *I'm not going to discharge you because we may need you further in this case.* So you might have to sit around and twiddle your thumbs, if you'll step out into that jury room, I'll let the original twelve go to the jury room.

The defendant did not object at trial to this statement to the alternate juror.

On appeal defendant asserts that the trial court's comments patently intimated to the jurors that the trial court believed the evidence to justify verdicts of guilty of first-degree murder, which might necessitate the alternate juror's presence at a capital sentencing proceeding. We disagree.

Judicial expression of opinion regarding the evidence is statutorily prohibited under N.C.G.S. §§ 15A-1222 and -1232. "A remark by the court is not grounds for a new trial if, when considered in the light of the circumstances under which it was made, it could not have prejudiced defendant's case." *State v. King*, 311 N.C. 603, 618, 320 S.E.2d 1, 11 (1984) (citing *State v. Green*, 268 N.C. 690, 693-94, 151 S.E.2d 606, 609 (1966)). The burden rests upon defendant to show that the trial court's remarks were prejudicial. *State v. Blackstock*, 314 N.C. 232, 333 S.E.2d 245 (1985). With these principles in mind, we do not find that the trial court's statement expressed any opinion regarding the evidence or its sufficiency. Further, the trial court made it clear that it had no such opinion by informing the jury that:

The law as it should requires a presiding judge to be impartial. Do not draw any inference from any ruling that I've made, or any inflection in my voice or expression on my face or any question that I might have asked a witness or anything else that I might have said or done during this trial, that I have an opinion or that I have tried to intimate to the jury an opinion as to whether part of the evidence ought to be believe [sic] or disbelieved or as to whether any facts have been proved or not proved or as to what your findings ought to be.

We conclude that the trial court's comment did not constitute prejudicial error. This assignment of error is without merit.

[4] Defendant next assigns error to the trial court's instruction to the jury that it could consider "the nature of the assault" on the issue of intent to kill. Defendant contends that the trial court erred in this regard by giving the following jury instruction regarding the first-degree murder charges:

Intent is a mental attitude which is seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred.

An intent to kill may be inferred *from the nature of the assault, the manner in which it was made*, the conduct of the parties and other such relevant circumstances.

Where jury instructions are given without supporting evidence, a new trial is required. *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975). Defendant contends that there was no evidence introduced at trial tending to show an assault in the present case. We disagree.

In the present case, evidence tended to show that defendant was seen immediately before the fire with a five-gallon bucket of gasoline. Having previously threatened the occupants of the mobile home with the words, "I'll get your ass," defendant deposited the gasoline in the mobile home, which immediately ignited. Witnesses then saw defendant exit the smoking mobile home with his clothes on fire. The mobile home then exploded into flames.

The word "assault" has been defined as an overt act or attempt, with force or violence, to do some immediate physical injury to the person of another, which is sufficient to put a person of reasonable firmness in fear of immediate physical injury. *State v. Roberts*, 270 N.C. 655, 155 S.E.2d 303 (1967). The intentional pouring of a large

amount of highly volatile and flammable liquid such as gasoline into living quarters heated by kerosene space heaters certainly would put a person of reasonable firmness in fear of immediate personal injury. Therefore, the evidence in the present case does tend to show an assault upon the victims. Consequently, the jury instruction on intent in this case was proper. This assignment of error is without merit.

[5] In another assignment of error, defendant contends that the trial court committed reversible error requiring a new trial when it denied defendant's motions for mistrial based on the jurors' repeated reports that they were deadlocked and based on the length of the deliberations. The jury deliberated for more than fourteen hours over a period of four days, including a weekend recess.

The jury began deliberating Thursday at approximately 3:00 p.m. Defendant moved for a mistrial during the jury's lunch recess on Friday, but the motion was denied by the trial court. The trial court allowed the jury to recess from Friday afternoon until Monday. After the jury had begun its deliberations on Monday morning, the trial court called the jury into the courtroom to inquire of the foreman, Mr. Spears, as follows:

THE COURT: You've been out for about an hour and forty minutes, I thought I'd give you a recess so that you can refresh yourself.

Let me inquire, Mr. Spear [sic], is the jury making any progress?

MR. SPEARS: We're at a standstill right now, sir.

THE COURT: You want to continue to deliberate, you think further deliberations will bear fruit? Y'all were out all day Friday.

MR. SPEARS: According to the ones who—

THE COURT: (Interposing) I don't want to know what your situation is at all. I just want to—.

MR. SPEARS: At thie [sic] time, no, I don't think—.

THE COURT: Let me do this. Let me give you a recess, let y'all refresh yourselves, come back in fifteen minutes and have your seats. I'll let you go out and I'll let y'all discuss it a little bit further and then you come back in and let me know what—y'all make some decision about, whether or not you think you can make further progress. There is no rush.

**STATE v. PORTER**

[340 N.C. 320 (1995)]

I don't want to pursue anybody to do anything. I'll be guided by y'all's assessment of what you think the situation is. I don't want to interfere in it. So take fifteen minutes, cease your deliberations and remember my instructions about your conduct.

Come back and have your seats and we'll do that.

After fifteen minutes, the jury was returned to the courtroom. During its absence, defendant renewed his motion for a mistrial. It was denied.

When the jury was reconvened, the trial court again addressed the jurors:

THE COURT: All right, Mr. Spears, I'm going to let you all again retire, and I want you to understand, all the jurors to understand, that we're here, we've got plenty of time, there's no rush, y'all take whatever time you feel is necessary in this matter.

If you feel that you're reached an impossible impasse, if you'll let me know about that, we'll discuss it further.

So I'm going to return the verdict sheets to you and let you continue and let me know what your situation is.

Again, the jury retired to deliberate. After an hour and twenty minutes, the trial court returned the jury to the courtroom and asked if the jury had arrived at a unanimous verdict. The foreman responded that it had not but that the jury would "continue one more time." The trial court then called a lunch recess.

After lunch and before sending the jury to the jury room, the trial court gave the following instruction:

Members of the jury, before you continue your deliberations, let me say this to you. First, jurors have a duty to consult with one another, and to deliberate with a view of reaching an agreement, if it can be done without violence to individual judgment.

Of course, each juror must decide the case for himself, but only after impartial consideration of the evidence with his fellow jurors. During the course of deliberations, the juror should not hesitate to reexamine his own views and change his opinion if he's convinced it is erroneous.

No juror should, of course, surrender his honest conviction as to weight or effect of the evidence solely because of the opin-

ion of his fellow jurors or for the mere purpose of returning a verdict.

After another hour and twenty minutes, the trial court had the jury returned to the courtroom, and the following dialogue took place:

THE COURT: Mr. Spears, let me make an inquiry again, without asking you how you're divided or anything of that kind, I'd just like to know if you feel the jury is making any progress towards reaching a verdict.

MR. SPEARS: No, sir.

THE COURT: Again, we've got all the time in the world, and I'm not rushing you, don't want you to feel rushed or anything of that kind.

My question is, do you feel that if we stay longer that the jury will make any progress, if you will give me a straight-up assessment as best you can?

MR. SPEARS: No, sir.

THE COURT: You don't believe you will?

Let me ask, is anybody on the jury who dissents from what Mr. Spears said?

If you do raise your hand or let me put the question another way. If there is anyone on the jury who feels that we can make progress, that the jury can make progress if you continue deliberations.

(No response.)

THE COURT: Again, I don't want you to feel rushed, but if there is anybody who feels like we can make progress, I think we ought to continue to try, if you can, but if all of you honestly are satisfied that you've done all you can do, and there is no need to continue, I need to know that.

I need to know what y'all's feeling is. Let me ask you, I was going to give you a recess, let me ask you to do this. Having the questions I've put to you, do you want to—let me let you retire for just a moment and discuss the questions of whether or not you think further deliberations with the other folks and give y'all's . . . honest assessment of what you think the prospects are, and if

the honest prospect is you can't make any—you know, are not able to make any progress, just tell me that.

I don't want to keep you here unnecessarily but again, if you feel you can make progress, we've got all week, take whatever time you need. Let me let y'all—I was going to give you a break, but let me do that, let me ask you to step back and consider the questions I just put to you, and I'll bring you back. Knock on the door when you're ready to answer those propositions.

After ten minutes in the jury room, the jury returned and reported that it wished to deliberate further. After an additional hour of deliberations, the jury reported that it had arrived at some verdict or verdicts but that it had not reached verdicts as to all of the charges. The trial court then sent the jury home for an overnight recess. The next morning, the jury deliberated for another hour and ten minutes before returning verdicts of guilty as to all of the charges. The jury had deliberated for a total of fourteen hours and twenty minutes, spanning four days.

In deciding whether the trial court coerced a verdict by the jury, the appellate court must look to the totality of the circumstances. *State v. Patterson*, 332 N.C. 409, 420 S.E.2d 98 (1992). Some of the factors considered are whether the trial court conveyed an impression to the jurors that it was irritated with them for not reaching a verdict and whether the trial court intimated to the jurors that it would hold them until they reached a verdict. *State v. Beaver*, 322 N.C. 462, 464, 368 S.E.2d 607, 608 (1988).

In the present case, defendant contends that the trial court intimated that it was unhappy with a report of a deadlocked jury and would hold the jury until it reached a verdict. Defendant contends that the various exchanges between the trial court and the foreman could only have communicated the court's displeasure. We find no merit in this argument. Nothing in the record suggests an expression by the trial court that it was displeased with the jurors.

**[6]** Defendant also refers to the trial court's statements that "we've got all the time in the world" and "we've got all week." He argues that those statements conveyed the meaning that the trial court would force the jury to continue to deliberate until a verdict was reached, no matter how long it took. We do not agree.

Guidelines for instructing a potentially deadlocked jury are contained in N.C.G.S. § 15A-1235, which states:

(a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

> (1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>
> (2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
>
> (3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
>
> (4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

N.C.G.S. § 15A-1235 (1988). It is clearly within the sound discretion of the trial court to determine whether to give an instruction pursuant to subsection (c) of this statute. *State v. Williams*, 315 N.C. 310, 338 S.E.2d 75 (1986).

[7] In this case, it was within the trial court's discretion to require the jury to continue its deliberations without giving the instructions contained in subsections (a) and (b). N.C.G.S. § 15A-1235(c). This was the action taken by the trial court when the jury did not return a verdict by midmorning Monday, the second full day of deliberations. After that instruction to continue to deliberate, and before the lunch

recess on Monday, the foreman told the trial court that although the jurors had not reached a unanimous verdict, they were "going to continue one more time." This statement evinces the jury's own assessment that an agreement could be reached.

After lunch, the trial court instructed the jury in accord with N.C.G.S. § 15A-1235(a) and (b). That afternoon, the trial court inquired whether further deliberations would be worthwhile. After being informed by the foreman that progress was at a standstill, the trial court asked the jury to return to the jury room to consider simply whether additional deliberations would be fruitful. After ten minutes in the jury room, the jury returned and responded that further deliberations were worthwhile. By the end of that day, the jury had reached some verdict or verdicts but had not reached verdicts as to all charges. After an overnight recess, the jury deliberated further and returned verdicts finding defendant guilty of all charges.

The statements of the jury and its subsequent actions validate the trial court's determination that further deliberations were worthwhile. The jury decided in the privacy of the jury room that it could come to agreement and did so within a few hours. Considering the totality of the circumstances and giving proper deference to the trial court's exercise of discretion, we can only conclude that the trial court did not abuse its discretion by denying defendant's motion for a mistrial and giving additional jury instructions. The decision to convict a man of arson and three counts of first-degree murder is a particularly heavy one; considerable deliberation is warranted. Here, the trial court facilitated that deliberation, but it did not force a verdict.

[8] Moreover, we find no merit in defendant's argument that the deliberations were too long, in light of the time needed for the actual trial. Although the jury deliberated for four days, while only two days were used for the presentation of evidence, we decline to adopt any rule as to how long the jury should be allowed to deliberate which is based on the time required for the State to present evidence. It is left to the discretion of the trial court to decide if jury agreement as to a verdict is reasonably possible. N.C.G.S. § 15A-1235(d). Here, the trial court did not abuse its discretion. Therefore, we find no merit in this assignment of error.

The defendant received a fair trial free of prejudicial error.

NO ERROR.