An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1460

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

v.

Guilford County
No. 12 CRS 080377

DOMENICO ALEXANDER LOCKHART


Appeal by defendant from judgment entered 16 July 2013 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 22 May 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for the State.*

> *John R. Mills for Defendant.*

ERVIN, Judge.

Defendant Domenico Alexander Lockhart appeals from a judgment sentencing him to a term of 225 to 279 months imprisonment and ordering him to pay a $500,000 fine based upon his conviction for conspiring to traffic in heroin by possessing over 28 grams of that controlled substance. On appeal, Defendant contends that the trial court erroneously coerced the jury's guilty verdict by delivering certain supplemental instructions in an "extremely loud" voice and by concluding his supplemental instructions by stating, "[t]ake your time. We

have all day and all week if necessary." After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that the trial court's judgment should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

On the afternoon of 12 June 2012, Deputy Herbert Sampson of the Guilford County Sheriff's Department was parked in the median of Interstate 85 near the Wiley Lewis Bridge when he saw a blue Honda Civic following a white Lexus too closely. After making this observation, Deputy Sampson activated his blue lights and entered the highway in order to make a traffic stop. Although the driver of the Honda Civic promptly pulled over, the driver of the white Lexus ignored Deputy Sampson's signal and drove on.

As Deputy Sampson approached the Honda Civic, he noticed that Defendant, who was driving, appeared nervous and that Defendant's chest and lap were covered with loose bits of cigar tobacco, which Deputy Sampson identified as "blunt innards" and "tobacco shake." According to Deputy Sampson, such loose bits of cigar tobacco are associated with marijuana use.

After Deputy Sampson asked Defendant to produce his driver's license, Defendant informed Deputy Sampson that he did not have a license or any other type of written identification. However, Defendant did provide his name and date of birth. In addition, Defendant presented Deputy Sampson with an Enterprise car rental agreement that indicated that the Honda Civic had been leased exclusively to a person named Tiffany Push on 29 May 2012 in Patterson, New Jersey, and was scheduled to have been returned 1 June 2012.

After entering Defendant's name and date of birth into the mobile computer terminal located in his patrol vehicle, Deputy Sampson confirmed that Defendant's license had been revoked and that there was an outstanding warrant for Defendant's arrest. As a result, Deputy Sampson informed Defendant that he was required to take Defendant into custody on the basis of the outstanding warrant. At that point, Deputy Sampson asked Defendant to exit the Honda Civic, patted him down, handcuffed him, and placed him in the front passenger seat of Deputy Sampson's patrol vehicle.

As Deputy Sampson took Defendant into custody, Defendant volunteered that the Honda Civic did not contain anything of interest, an unsolicited statement that made Deputy Sampson suspicious. As a result, Deputy Sampson directly asked

Defendant whether there were any drugs, narcotics, or weapons in the Honda Civic and whether Deputy Sampson could search the vehicle. In response, Defendant dropped his head to his chest with a defeated look and said, "[n]o, go ahead."

In the course of searching the vehicle, Deputy Sampson found a mixture of marijuana and tobacco on the front seat and a plastic baggie containing approximately three grams of marijuana hidden under the center console. In the Honda Civic's trunk, Deputy Sampson found a large black suitcase that contained a blue soft-sided cooler-type lunch bag or box, a black plastic bag tied in a knot, and other materials he associated with heroin trafficking. Upon opening the light blue cooler, Deputy Sampson found 18 grams of heroin powder, scales, stamps, and cutting agents. In the black plastic bag, Deputy Sampson found a pie pan containing rice and small bindles of heroin that had been rubber-banded together. According to Special Agent Patti Jo Carroll, a forensic scientist with the State Bureau of Investigation, the white powder seized from the Honda Civic consisted of more than 28 grams of heroin.

As Deputy Sampson and Corporal Lucas T. Moser of the Guilford County Sheriff's Department, who had arrived to assist Deputy Sampson, were searching the black suitcase, Defendant called over to Deputy Sampson and said, without having been

questioned by any law enforcement officer, "I know that I'm going to be arrested for that stuff, but it's not mine. The suitcase was supposed to be in the car I was following."

As Corporal Moser processed the evidence that had been taken from the Honda Civic, Deputy Sampson, along with Detective Tim Weavil of the Guilford County Sheriff's Department, interviewed Defendant. Defendant stated that he lived in Charlotte, that he worked on cars, and that he had repaired a car for an individual that he only knew as "Cal." According to Defendant, "Cal" asked Defendant whether he wanted to make $200 and Defendant gave an affirmative answer. Initially, Defendant told the investigating officers that he had agreed to drive the Honda Civic and the heroin from Charlotte to Greenville, North Carolina, at which point he was supposed to turn the car over to someone who would drive the car and the heroin to Patterson, New Jersey. Subsequently, Defendant told the investigating officers that, although he knew that the trip involved the transportation of heroin, the heroin was supposed to have been in the white Lexus that he was following rather than the Honda Civic and speculated that "Cal" must have transferred the heroin from the Lexus to the Honda Civic.

## B. Procedural Facts

On 12 June 2012, a magistrate's order charging Defendant with trafficking in more than 28 grams of heroin by possession was issued. On 6 August 2012, the Guilford County grand jury returned a bill of indictment charging Defendant with trafficking in more than 28 grams of heroin by possession and conspiring with an unknown person to traffic in more than 28 grams of heroin by possession.[1] On 8 July 2013, Defendant filed a motion seeking to have any evidence seized from the Honda Civic suppressed. On 16 July 2013, the trial court entered an order denying Defendant's suppression motion.

The charges against Defendant came on for trial before the trial court and a jury at the 8 July 2013 criminal session of the Guilford County Superior Court. On 16 July 2013, the jury returned a verdict convicting Defendant of conspiracy to traffic in more than 28 grams of heroin by possession and acquitting Defendant of trafficking in more than 28 grams of heroin by possession and transportation. At the conclusion of the ensuing sentencing hearing, the trial court entered a judgment ordering that Defendant be imprisoned for a term of 225 to 279 months and

---

[1]Although Defendant appears to have been charged with trafficking in more than 28 grams of heroin by transportation as well, the record on appeal presented for our review does not contain any indictment purporting to charge Defendant with having committed that offense.

pay a $500,000.00 fine. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Legal Analysis

In his brief, Defendant argues that the trial court impermissibly coerced the jury into returning its verdict in this case. In support of this contention, Defendant asserts that the trial court delivered an instruction to the jury concerning the jury's alleged inability to reach a unanimous verdict in an impermissible manner and that the language that appeared at the end of this supplemental instruction clearly conveyed the message to the jury that the trial court would compel it to continue deliberating until they had reached a verdict. We do not believe that either of Defendant's arguments have merit.

## A. Relevant Factual Information

The jury began deliberating on a verdict at 9:58 a.m. on 16 July 2013. Approximately one hour later, the members of the jury asked the trial court to reinstruct them concerning the elements of the offenses with which Defendant had been charged. After the trial court delivered these supplemental instructions, the jury resumed its deliberations. At 12:11 p.m., the jury sent the trial court a note asking, "[w]hat do we do if we cannot agree on two of the charges?" After reviewing the jury's

communication, the trial court informed the parties, without drawing any objection, that he intended to instruct the jury in accordance with NCPJI 101.40, which reflects the approach required by N.C. Gen. Stat. § 15A-1235 and the decision of the United States Supreme Court in *Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 157, 41 L. Ed. 528, 530-31 (1896).[2] Once the jury returned to the courtroom, the trial court delivered a supplemental instruction that was substantively identical to that set out in NCPJI. 101.40 and concluded by saying, "[t]ake your time. We have all day and all week if necessary." The jury returned to its deliberations at 12:15 p.m. and returned a unanimous verdict convicting defendant of conspiracy to traffic in more than 28 grams of heroin by possession and acquitting Defendant of trafficking in more than 28 grams of heroin by possession and transportation at 12:35 p.m. After taking a lunch break, the trial court commenced the required sentencing hearing, at which point Defendant unsuccessfully objected to the fact that, as he saw it, the

---

[2]As the Supreme Court has clearly held, the approach employed in N.C. Gen. Stat. § 15A-1235 represents North Carolina's attempt to comply with *Allen* and its progeny. *State v. Alston*, 294 N.C. 577, 597, 243 S.E.2d 354, 367 (1978) (stating that the "enactment [of N.C. Gen. Stat. § 15A-1235] provides our trial judges and our practicing attorneys with clear standards for . . . instructions" like those contemplated in *Allen*).

trial court had delivered an "extremely loud" supplemental instruction.

## B. Preservation of Defendant's Claims

As he candidly acknowledges, Defendant did not lodge a contemporaneous objection to the manner in which the trial court delivered its supplemental instructions or to the content of those instructions in the court below. Although the parties have vigorously debated the extent, if any, to which Defendant properly preserved his challenges to the trial court's supplemental instructions, with Defendant claiming that there was no necessity for a contemporaneous objection to the trial court's supplemental instructions and the State claiming that such an objection was required, we need not devote substantial time to a thorough discussion of this question given this Court's recent decisions in *State v. Blackwell*, __ N.C. App. __, __, 747 S.E.2d 137, 140 (2013), and *State v. Gillikin*, 217 N.C. App. 256, 261, 719 S.E.2d 164, 168-69 (2011),[3] to the effect that

---

[3]Although discretionary review has been granted and a stay ordered in *State v. May*, __ N.C. App.__, 749 S.E.2d 483, 490 (2013), *disc. review allowed*, __ N.C.__, 753 S.E.2d 663 (2014), which raises the same preservation issue found in *Gillikin* and *Blackwell*, those decisions remain binding upon us unless and until the Supreme Court overturns our earlier decision. *In re Appeal of Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (stating that, "[w]here a panel of the Court of Appeals has decided the same issue, albeit it in a different case, a subsequent panel of the same court is bound by that precedent,

claims such as those at issue here implicate the "unanimous jury" right embodied in N.C. Const. art. I, sec. 24. "While the failure to raise a constitutional issue at trial generally waives that issue for appeal, where the error violates the right to a unanimous jury verdict under Article I, Section 24, it is preserved for appeal without any action by counsel." *State v. Wilson*, 363 N.C. 478, 479, 681 S.E.2d 325, 326 (2009). As a result, we will reach the merits of Defendant's challenges to the trial court's supplemental instructions despite the fact that Defendant failed to raise the issues that he presents for our review before the trial court in a timely fashion.

## C. Standard of Review

In determining whether a trial court's instructions "force a verdict or merely serve as a catalyst for further deliberations," we consider the totality of the circumstances "under which the instructions were made and the probable impact of the instructions on the jury." *Gillikin*, 217 N.C. App. at 262, 719 S.E.2d at 168 (quoting *State v. Fernandez*, 346 N.C. 1, 21, 484 S.E.2d 350, 362-63 (1997)). In the event that the trial court's instructions did erroneously "force" a verdict, the defendant is entitled to relief unless the State shows that the trial court's error was harmless beyond a reasonable doubt.

unless it has been overturned by a higher court.") (citations omitted).

*Wilson*, 363 N.C. at 487, 681 S.E.2d at 331. An error is harmless beyond a reasonable doubt if it "did not contribute to the defendant's conviction." *Gillikin*, 217 N.C. App. at 261, 719 S.E.2d at 168 (quoting *Wilson*, 363 N.C. at 487, 681 S.E.2d at 331).

D. Specific Challenges to the Supplemental Instructions

1. Basic Principles Governing Supplemental Instructions

The manner in which a trial court should address a jury that is having trouble reaching a decision is addressed in N.C. Gen. Stat. § 15A-1235, which was enacted to serve as "the proper reference for standards applicable to charges which may be given a jury that is apparently unable to agree upon a verdict." *State v. Easterling*, 300 N.C. 594, 608, 268 S.E.2d 800, 809 (1980) (citing *Alston*, 294 N.C. at 596-97, 243 S.E.2d at 366-67). According to N.C. Gen. Stat. § 15A-1235(a), a trial court is required to instruct the jury that a verdict must be unanimous. In addition, N.C. Gen. Stat. § 15A-1235(b) provides that, in its discretion, a trial court may instruct the jury that:

> (1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>
> (2) Each juror must decide the case for himself, but only after an impartial

consideration of the evidence with his fellow jurors;

(3) In the course of deliberation, a juror should not hesitate to reexamine his own views and change his opinion if convinced that it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

On the other hand, however, N.C. Gen. Stat. § 15A-1235(c) explicitly provides that:

If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

We will now evaluate Defendant's contentions in light of these well-established principles of North Carolina law.

2. Delivery of the Supplemental Instructions

As an initial matter, Defendant contends that the trial court erred by delivering its supplemental instructions using an "extremely loud" voice. According to Defendant, the volume at which the trial court allegedly delivered its supplemental instructions informed the jury of its dissatisfaction with the length of time that the deliberation process was taking and had

the effect of coercing the jury into reaching a unanimous verdict. Although the delivery of a supplemental instruction in such a manner as to threaten to require the jury to deliberate for an unreasonable time is unlawful, N.C. Gen. Stat. § 15A-1235; *see State v. Porter*, 340 N.C. 320, 336, 457 S.E.2d 716, 724 (1995) (stating that "[s]ome of the factors considered are whether the trial court conveyed an impression to the jurors that it was irritated with them for not reaching a verdict and whether the trial court intimated to the jurors that it would hold them until they reached a verdict"), we do not believe that anything about the manner in which the trial court delivered its supplemental instructions had a coercive effect.

As Defendant requested, the Court has listened to a recording of the trial court's supplemental instructions. Our review of the recording of the supplemental instructions indicates that, while the trial court spoke with sufficient emphasis to ensure that the jury could hear and understand what was being said and both raised and lowered the volume at which it was speaking at different points, the volume level that the trial court utilized was not excessive given the conditions that exist in the average trial courtroom. In addition, we detected nothing in the tone of voice that the trial court utilized in delivering these supplemental instructions that would have any

sort of coercive effect. The fact that no one contradicted Defendant's post-verdict contention that the trial court delivered the supplemental instructions in an "extremely loud" voice is just as consistent with a disregarding of Defendant's contention as unmerited as it is with acceptance of the validity of Defendant's assertion. As a result, given that a reasonable juror would not have had any basis for concluding that the trial court was concerned about the length of time being occupied by the deliberations process based upon the manner in which the trial court delivered its supplemental instructions, Defendant is not entitled to appellate relief on the basis of this contention.

### 3. Language Used in the Supplemental Instructions

In addition to asserting that the trial court erred by delivering its supplemental instructions in an "extremely loud" voice, Defendant contends that the trial court actively coerced the jury into reaching a verdict by concluding its supplemental instructions with the statement, "[t]ake your time. We have all day and all week if necessary." In essence, Defendant asserts that this statement constituted a veiled threat to compel the jury to continue deliberating until it reached a verdict. We are unable to agree with Defendant's characterization of the trial court's concluding remarks.

A careful review of the transcript compels us to conclude that, rather than representing an attempt to coerce the jury into reaching a quick verdict, the trial court was simply attempting to reassure the members of the jury that they should not be concerned about the length of time that it was taking them to reach a unanimous verdict. Language similar to that employed by the trial court in this case has been held to be unexceptionable by the Supreme Court. For example, in *Porter*, 340 N.C. at 333, 335, 457 S.E.2d at 722-23, the Supreme Court found that the trial court's statement to a jury that had already been deliberating for four days to the effect that, "we've got plenty of time, there's no rush, y'all take whatever time you feel is necessary in this matter" and "we've got all week" did not, when considered in context, have the effect of coercing a verdict. As a result of the fact that the jury had been deliberating for slightly less than half a day when the trial court made the challenged statement to the jury and the fact that nothing in the language actually utilized by the trial court in any way intimated that the jury would be required to continue to deliberate until it reached a verdict, we are unable to see any error in the language utilized at the conclusion of the trial court's supplemental instructions and hold, for that

reason, that Defendant is not entitled to relief from the trial court's judgment on the basis of this contention.[4]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that neither of Defendant's challenges to the trial court's judgments have merit.  As a result, the trial court's judgments should, and hereby do, remain undisturbed.

NO ERROR.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.

Report per Rule 30(e).

---

[4]Although Defendant correctly notes that the trial court in this case, unlike the trial court in *Porter*, did not inquire of the jury if further deliberations would be appropriate before making the challenged statement, that fact, standing alone, is not sufficient to cause us to conclude that a different outcome is appropriate here.  Similarly, we are unable to deduce from the mere fact that the jury reached a verdict approximately 20 minutes after the delivery of the challenged supplemental instruction that the jury felt intimidated by the trial court's conduct, since that fact is just as consistent with a conclusion that the supplemental instruction achieved its purposes of facilitating more effective jury deliberations.