STATE OF NORTH CAROLINA v. CORNELIUS ALVIN NOBLES

No. 156A98

(Filed 25 June 1999)

## 1. Constitutional Law, North Carolina— presence at capital trial—excusal of prospective juror—private conversation—harmless error

The trial court violated defendant's nonwaivable right to be present at every stage of his capital trial by excusing a prospective juror following an unrecorded private conversation with the prospective juror. However, defendant's absence from the trial court's communication with the prospective juror was harmless beyond a reasonable doubt where the trial transcript reveals that the juror was properly excused because he was over the age of sixty-five. N.C.G.S. §§ 9-6(a), 9-6.1; N.C. Const. art. I, § 23.

## 2. Criminal Law— capital trial—court's conversation with prospective juror—failure to record—harmless error

While the trial court violated N.C.G.S. § 15A-1241 by failing to record its ex parte communication with a prospective juror in a capital trial before excusing the juror, this error was harmless where the trial transcript reveals that the prospective juror was properly excused because he was over the age of sixty-five.

## 3. Appeal and Error— improper excusal of jurors—silent record

Defendant failed to show that two prospective jurors were excused after private conversations in violation of defendant's nonwaivable right to be present at every stage of his capital trial where the record does not reflect that any actions were ever taken by the trial judge to excuse the two jurors.

## 4. Appeal and Error— preservation of issues—constitutional issue—failure to raise in trial court

The constitutionality of a hypothetical question asked four prospective jurors as to whether each juror herself could vote to

recommend the death penalty was not presented on appeal where none of the prospective jurors was actually excused on the basis of her response to this question, and the issue was not raised and determined in the trial court.

**5. Jury— capital case—jury selection—death penalty views— excusal for cause**

The trial court did not abuse its discretion in excusing four prospective jurors for cause based upon their answers to death-qualifying questions where (1) the first juror answered "Probably so" when asked whether her "feelings about the death penalty would prevent or substantially impair the performance of her duty as a juror in accordance with the evidence and the law in this case," defendant attempted to rehabilitate the juror, and the juror then stated that she was not sure if she could follow the court's instructions; (2) the second juror informed the prosecutor that she would be unable to set aside her personal feelings about the death penalty and follow the instructions, she told the trial court that she could not return a recommendation of death no matter what the evidence or facts, and after attempted rehabilitation by defendant, she replied affirmatively when asked by the prosecutor whether her death penalty views would prevent or substantially impair her ability to serve as a juror in accordance with the evidence and the law in a death penalty case; (3) the third juror indicated that she could never vote to return the death penalty regardless of what the evidence and law might be, and although she stated during rehabilitation that she could set aside her feelings and consider the death penalty, she again told the prosecutor that her feelings about the death penalty would prevent or substantially impair the performance of her duty as a juror and then told the court that she could not return a recommendation of death no matter what the facts were; and (4) the fourth juror stated that she might not be able to recommend a death sentence based on her religious principles and personal feelings, that those feelings could prevent or substantially impair the performance of her duty as a juror in a death penalty case, and although she later indicated that she could consider both possible penalties, she then told the court that she did not know whether she could recommend the death penalty.

**6. Jury— voir dire—knowledge of case—question not improper stake-out—waiver**

In a prosecution for first-degree murder and discharging a firearm into occupied property, the prosecutor's question to prospective jurors as to whether they knew or had read anything about the case which informed the jurors that the vehicle into which defendant fired was occupied by defendant's wife and three small children was not an improper stake-out question. Further, defendant waived his right to complain on appeal about the prosecutor's mention of the fact that defendant's three children were in the vehicle at the time of the shooting by failing to object during trial.

**7. Jury— voir dire—outline of felony murder—not inadequate statement of law**

The prosecutor's questions to prospective jurors in which he defined felony murder as a killing which occurs during the commission of a violent felony, such as discharging a firearm into an occupied vehicle, did not constitute inaccurate or inadequate statements of the law because they failed to inform the jurors of the State's burden of proving that defendant knew the vehicle was occupied since the prosecutor never intended to list any elements of the offense, and defendant never requested that he do so. Moreover, defendant suffered no harm from the prosecutor's substitution of "vehicle" for "property" when using the crime as a sample felony.

**8. Evidence— photographs—not victim impact evidence**

The publication to the jury of portrait-style photographs of defendant's three children who were in a vehicle when defendant fired into the vehicle and killed his wife did not constitute impermissible victim impact evidence and was not improper.

**9. Evidence— murder of wife—quarrels and ill-treatment—relevancy**

When a husband is charged with the murder of his wife, the State is permitted to present evidence of frequent quarrels and ill-treatment as bearing on intent, malice, motive, premeditation and deliberation.

STATE v. NOBLES

[350 N.C. 483 (1999)]

**10. Appeal and Error— preservation of issues—objection to relevancy—hearsay issue not presented—waiver**

Defendant's objection to the reading to the jury of a summons and warrants charging domestic crimes on the ground of relevancy was insufficient to preserve for appellate review the issue of whether the contents of the summons and warrants were inadmissible hearsay. Moreover, defendant waived objection to the admission of this evidence where defendant elicited testimony and himself testified on both direct and cross-examination regarding information contained in the summons and warrants and other witnesses testified about that information without objection.

**11. Appeal and Error— preservation of issues—failure to object or allege plain error**

Defendant waived appellate review of the issue of the admission of allegedly hearsay testimony where defendant did not object on the ground of hearsay and has not alleged plain error.

**12. Evidence— hearsay—state of mind exception**

Statements made by a murder victim to her brother about domestic violence incidents reflected the victim's state of mind and were admissible under N.C.G.S. § 8C-1, Rule 803(3).

**13. Appeal and Error— preservation of issues—objection after answer—absence of motion to strike—waiver**

Defendant waived his objection to testimony where the objection was lodged after the witness had answered and defendant made no motion to strike the answer.

**14. Appeal and Error— submission of transcript—admission of evidence—absence of appendix or reproduction in brief— waiver of appellate review**

Assignments of error to the admission of testimony regarding defendant's alleged threats and violent conduct directed to members of the victim's family are deemed waived for failure to comply with the Rules of Appellate Procedure where the transcript of the proceedings was filed pursuant to Rule 9(c)(2), and defendant cited only various transcript pages but failed either to attach the pertinent portions of the transcript or to include a verbatim reproduction in his brief of the specific questions and answers which he wants the appellate court to review for error.

**15. Firearms and Other Weapons— discharging firearm into occupied vehicle—seven counts—sufficient evidence**

The State presented sufficient evidence to support defendant's conviction of seven distinct charges of discharging a firearm into an occupied vehicle, although witnesses testified that they heard only four gunshots and that only four shell casings were recovered at the crime scene, where the State's evidence tended to show the existence of seven bullet holes in various parts of the victim's vehicle, that defendant's firearm had the capacity to hold nine bullets and was empty at the murder scene, and that earlier on the day of the murder the victim's vehicle did not have any bullet holes or broken glass.

**16. Firearms and Other Weapons— discharging firearm into occupied vehicle—consolidation of counts not required**

The trial court did not err by denying defendant's motion to consolidate seven counts charging defendant with discharging a firearm into an occupied vehicle where the evidence tended to show that defendant's actions were seven distinct and separate events and that each bullet hit the vehicle in a different place.

**17. Criminal Law— jury request—failure to conduct jurors to courtroom—harmless error**

The trial court erred by failing to conduct the jurors to the courtroom following a request by the jury for certain items of evidence as required by N.C.G.S. § 15A-1233(a). However, defendant was not prejudiced by the trial court's failure to follow the requirements of the statute where defense counsel agreed with the trial court when it thought it had discretion whether to bring the jury to the courtroom, there was unanimous agreement among the State, the defendant, and the trial judge concerning the items requested by the jury, and the prosecution and defendant consented to permitting the jury to have those items.

**18. Criminal Law— deadlocked jury—further deliberations— verdict not coerced—mistrial properly denied**

The trial court in a prosecution for first-degree murder and discharging a firearm into occupied property did not (1) coerce a verdict by instructing the jury to continue deliberations or (2) err by denying defendant's motion for a mistrial due to the deadlock where the jury had deliberated only ten hours over three days when the motion for mistrial was made and deliberated a total of eleven hours before returning its verdicts; the trial court

instructed the jurors on their duties under N.C.G.S. § 15A-1235(b) to consult with each other, to decide individually, and to reexamine one's views if necessary but not to surrender one's honest convictions; and statements by jurors and their subsequent actions validated the trial court's conclusion that further deliberations would be worthwhile.

**19. Criminal Law— mistrial—remark by victim's father— absence of prejudice**

A remark by a murder victim's father from the audience in the presence of the jury that defendant was not being railroaded, made in response to defendant's statements that he was being railroaded into a death sentence, was not so prejudicial to defendant as to render the trial court's denial of his motion for a mistrial a manifest abuse of discretion reversible on appeal.

**20. Appeal and Error— abandonment of contention—failure to cite authority or make argument**

Defendant abandoned his contention that the trial court erred by denying his motion to have a hesitant juror polled individually and outside the presence of other jurors by failing at trial and in his brief to cite any authority or put forth any argument in support of his motion.

**21. Jury— repolling of jury—motion after jury dispersed— waiver**

Defendant waived his right to repoll the entire jury in a first-degree murder prosecution by failing to make a timely motion before the jury was dispersed where the jury returned its guilty verdict and was polled, court was recessed for the weekend, and defendant did not make his motion until Monday morning.

**22. Jury— capital trial—excusal of juror after guilty verdict— medical reason—exercise of discretion**

The trial judge did not fail to exercise his discretion in excusing a juror for medical reasons following a guilty verdict in the guilt-innocence phase of a capital trial because he stated that he did not have "much choice" or "a whole lot of choice."

**23. Jury— capital trial—excusal of juror after guilty verdict— medical reason—no abuse of discretion**

The trial court did not abuse its discretion in excusing a juror for medical reasons following a guilty verdict in the guilt-inno-

cence phase of a capital trial where the juror gave the trial court a note from her physician that stress from jury duty could cause problems with her pregnancy. N.C.G.S. § 15A-2000(a)(2).

**24. Appeal and Error— plain error—failure to argue in brief— waiver**

Although defendant specifically and distinctly contended in his assignment of error to the trial court's instruction on an aggravating circumstance in a capital trial that the instruction amounted to plain error, defendant waived appellate review of this assignment of error by failing to argue in his brief that the instruction amounted to plain error.

**25. Sentencing— capital sentencing—aggravating circumstance—risk of death to more than one person—instruction on weapon—plain error**

The trial court's instruction on the (e)(10) aggravating circumstance that "a Lorcin 380 caliber semi-automatic pistol is a weapon which would normally be hazardous to the lives of more than one person" relieved the State of the burden to prove an element of the (e)(10) aggravating circumstance since it effectively took from the jury's consideration whether the weapon used by defendant in this case is normally hazardous to the lives of more than one person. This error was plain error entitling defendant to a new capital sentencing proceeding. N.C.G.S. § 15A-2000(e)(10).

**26. Criminal Law— prosecutor's closing argument—capital sentencing—mother's refusal to testify—implication not supported by record**

The prosecutor's jury argument in a capital sentencing proceeding, made in an attempt to rebut defendant's mitigating circumstances related to defendant's home environment, that defendant's own mother would not "come up here to testify" constituted an improper argument not supported by the evidence that testimony by defendant's mother would not have benefited her son's case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Lanier (Russell J., Jr.), J., on 10 September 1997 in Superior Court, Sampson County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his appeal of

additional judgments was allowed by the Supreme Court on 20 July 1998. Heard in the Supreme Court 10 May 1999.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, and William B. Crumpler, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janet Moore, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant Cornelius Alvin Nobles was indicted on 28 October 1996 for first-degree murder and four counts of discharging a firearm into occupied property. On 18 July 1997 defendant was indicted for three additional counts of discharging a firearm into occupied property. He was tried capitally and found guilty of first-degree murder on the basis of felony murder. He was also found guilty of six counts of discharging a firearm into occupied property. Following a capital sentencing proceeding, the jury recommended a sentence of death for the murder; and the trial court entered judgment accordingly. The trial court sentenced defendant to consecutive sentences of forty to fifty-seven months each for defendant's convictions of five counts of discharging a firearm into occupied property and arrested judgment for the conviction of the sixth count of discharging a firearm into occupied property because it was the predicate felony supporting the felony-murder conviction.

The State's evidence tended to show that on 28 August 1996 defendant shot and killed his wife, Ronita Nobles ("victim"). On 25 August 1996 defendant had been charged with assault on the victim; he was released on bond on 27 August 1996 but was to have no contact with the victim. On the evening of 28 August 1996, defendant was driving down Paul Ed Dail Road near Kenansville, North Carolina, in his Mercedes when he noticed his wife's Nissan pickup truck leaving the driveway of their house. Defendant stopped his car in the road and flashed his lights at the truck. He then got out of his car and shouted at the truck twice. The truck left the driveway and headed in defendant's direction. Defendant then took his gun out of his back pocket and began shooting at the truck. The driver's side of the truck hit defendant and ran over his foot, causing him to slam against the driver's side of the truck. The truck ran off the side of the road into a ditch.

As the truck was heading toward the ditch, Russell Brock was driving down Paul Ed Dail Road in the opposite direction of the victim's truck. Defendant returned to his car and proceeded to back up toward the truck. Defendant and Brock approached the truck at approximately the same moment. Defendant opened the driver's door and pulled the victim from the truck. Defendant told Brock that the victim was his wife and that he had shot her. Defendant then removed his two-year-old daughter from her car seat located in the passenger's seat; next, he removed his twin nine-month-old children, who were in car carriers, from the back seat of the truck. The children were unharmed.

Shortly thereafter members of the Duplin County Rescue Squad and the Duplin County Sheriff's Department arrived. The emergency medical technician found no signs of life in the victim at the murder scene. Seven bullet holes were found in the truck. Defendant was arrested at the scene.

Additional facts will be presented as needed to discuss specific issues.

## JURY SELECTION ISSUES

In his first argument defendant contends that the trial court committed reversible error under the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution when it had unrecorded private communications with three prospective jurors. Defendant argues that the excusals violated his nonwaivable right to be present at every stage of his capital trial. He also contends that the excusals violated his right to a "true, complete, and accurate record of all statements from the bench and all other proceedings" pursuant to N.C.G.S. § 15A-1241(a).

The Confrontation Clause of the North Carolina Constitution guarantees the right of every accused to be present at every stage of his trial. N.C. Const. art. I, § 23; *State v. Jones*, 346 N.C. 704, 708-09, 487 S.E.2d 714, 717 (1997). Furthermore, defendant's right to be present at every stage of his capital trial is nonwaivable. *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990). When the trial court excludes defendant from its private communications with prospective jurors at the bench prior to excusing them, it has committed reversible error unless the State can prove that the error was harmless beyond a reasonable doubt. *Id.*

A review of the jury selection process reveals that following the trial court's hearing of hardship excuses, six prospective jurors were excused, and the remaining sixty-three prospective jurors were divided into five panels. Lester Tanner was assigned to panel IV; Marjorie Gilbert was assigned to panel V; and David Mixon, when he appeared in the courtroom two days later, was also assigned to panel V. During the morning of the second day of jury selection, the following exchange transpired:

> THE COURT: All right. . . . [W]e're going to take about ten minutes. Be at ease, do what you need to do and be back here at quarter until.
>
> The record will reflect—what was the gentleman's name that we excused?
>
> COURT REPORTER: Tanner.
>
> THE COURT: Because he was over sixty-five.
>
> MS. THOMAS [prosecutor]: Was it Benny Peterson.
>
> THE CLERK: Benny Peterson's the one we had this morning.
>
> COURT REPORTER: I thought it was Tanner.
>
> MS. THOMAS: Yeah, Tanner. Lester Tanner.
>
> THE COURT: And, I'd advised the defense counsel that [sic] after we had returned and probably before we came into session.

As for prospective jurors Gilbert and Mixon, apart from being sworn in and assigned to panel V, there is no further mention of them in the record; and Gilbert and Mixon were not on the panel when the roll was called for the *voir dire* of panel V.

[1] Although the record is not clear whether Judge Lanier actually engaged in a private conversation with prospective juror Tanner prior to his excusal or whether defendant and his counsel were excluded from such conversation, for purposes of this appeal, we will assume that Judge Lanier did in fact violate defendant's nonwaivable constitutional right to be present at every stage of his trial. However, this error was harmless beyond a reasonable doubt.

In *State v. Adams*, 335 N.C. 401, 408, 439 S.E.2d 760, 763 (1994), the trial court heard excuses from three prospective jurors off the record and ultimately excused them. In performing a harmless error

analysis, this Court held that since "the transcript reveal[ed] that the substance of the unrecorded communications with the three jurors was adequately reconstructed by the trial judge[,] . . . the defendant's absence from the conference was harmless." *Id.* at 409, 439 S.E.2d at 763. Similarly, in *State v. Lee*, 335 N.C. 244, 262-63, 439 S.E.2d 547, 555-56, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994), this Court held that it was harmless error when the record revealed both the substance of private communications between the trial court and prospective jurors and that there were proper grounds for the excusals. *See also State v. Hartman*, 344 N.C. 445, 456, 476 S.E.2d 328, 334 (1996) (concluding that defendant's absence from the trial court's private exchange with a prospective juror was harmless beyond a reasonable doubt since the record indicated that she was properly excused based upon medical reasons), *cert. denied*, 520 U.S. 1201, 137 L. Ed. 2d 708 (1997); *State v. Williams*, 339 N.C. 1, 31, 452 S.E.2d 245, 263 (1994) (finding harmless error since the transcript revealed the substance of the *ex parte* communications and defendant was not harmed by his absence from the private conversation), *cert. denied*, 516 U.S. 833, 133 L. Ed. 2d 61 (1995); *State v. Payne*, 328 N.C. 377, 389, 402 S.E.2d 582, 589 (1991) (holding that questioning of prospective jurors in defendant's absence was harmless beyond a reasonable doubt as prospective jurors who were excused were either ineligible to serve or excused for manifestly unobjectionable reasons).

Defendant, however, contends that *Smith* and its progeny mandate a new trial. We disagree. In *Smith* the trial court invited prospective jurors to the bench to privately discuss reasons for excusal. *State v. Smith*, 326 N.C. at 793, 392 S.E.2d at 363. "After each of these unrecorded private bench conferences, the trial court excused the prospective juror, indicating that it was within the discretion of the court to excuse that particular juror." *Id.* Since there was no record from which to determine the substance of the private discussions, this Court held that "the State has failed to carry its burden [of proving] that the trial court's errors were harmless beyond a reasonable doubt." *Id.* at 794, 392 S.E.2d at 364. Again in *State v. Moss*, 332 N.C. 65, 74, 418 S.E.2d 213, 219 (1992), this Court granted the defendant a new trial because "[n]othing in the record . . . establishe[d] the nature and content of the trial court's private discussions with the prospective jurors." *See also State v. Cole*, 331 N.C. 272, 275, 415 S.E.2d 716, 717 (1992) (granting new trial when prospective jurors excused after unrecorded bench conferences and record was silent, thus preventing a determination that the error was harmless); *State v. McCarver*,

329 N.C. 259, 260-61, 404 S.E.2d 821, 821-22 (1991) (holding that the excusal of prospective jurors following unrecorded bench conferences "in the discretion of the Court and for good cause shown" was not sufficient to prove that the error was harmless beyond a reasonable doubt).

In the case *sub judice* the substance of the unrecorded communication with prospective juror Tanner was adequately revealed in the trial transcript. The transcript shows that Tanner was properly excused "[b]ecause he was over sixty-five." *See* N.C.G.S. §§ 9-6(a), 9-6.1 (1986). Therefore, defendant's absence from the trial court's communication with Tanner was harmless beyond a reasonable doubt.

[2] Defendant further notes that N.C.G.S. § 15A-1241 requires complete recordation of jury selection in capital trials. N.C.G.S. § 15A-1241(a) (1997) ("trial judge must require that the reporter make a true, complete, and accurate record of all statements from the bench and all other proceedings"). Thus, the trial court also erred by failing to record its *ex parte* communication with Tanner. *See State v. Williams*, 339 N.C. at 31, 452 S.E.2d at 263. However, for the reasons stated above, we conclude that this failure was harmless.

[3] As for prospective jurors Gilbert and Mixon, defendant argues that the record shows that they were also excused off the record. We cannot agree since the record does not reflect that any actions were ever taken by Judge Lanier to excuse Gilbert and Mixon. As this Court stated in *Adams*, defendant bears the burden of demonstrating error from the record on appeal. *State v. Adams*, 335 N.C. at 409, 439 S.E.2d at 764. Thus, "defendant must show from the record that the trial judge examined off the record prospective jurors other than those named. It is not enough for defendant to assert that there may have been other impermissible *ex parte* communications. The record must reveal that such communications in fact occurred." *Id.* at 409-10, 439 S.E.2d at 764. Therefore, "whatever incompleteness may exist in the record precludes defendant from showing that error occurred as to any [prospective] juror other than those the trial judge excused or deferred on the record." *Id.* at 410, 439 S.E.2d at 764; *see also State v. Fleming*, 350 N.C. 109, 121, 512 S.E.2d 720, 730 (1999) (finding no harm to defendant where a prospective juror was erroneously called for *voir dire* to an already occupied seat and the record discloses no *voir dire* of her); *State v. James*, 321 N.C. 676, 686, 365 S.E.2d 579, 585 (1988) (holding that "[w]here the record is

silent upon a particular point, the action of the trial court will be presumed correct"). Thus, this assignment of error is meritless.

Defendant next contends that the trial court erred in excusing four prospective jurors for cause based on their answers to death-qualifying questions, thereby denying defendant his statutory and constitutional rights. Defendant argues that prospective jurors Brenda Rose, Beverly Smith, Melody Tanner, and Angela Naylor unequivocally stated that they could consider both the death penalty and life imprisonment as possible penalties based on the evidence presented; thus, they were improperly excused for cause based on their responses to the unconstitutional, hypothetical question, "[C]ould you, yourself, vote to give somebody the death penalty?"

The test for determining when a prospective juror may be excused for cause is whether his views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). The fact that a prospective juror "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction" is not sufficient. *Witherspoon v. Illinois*, 391 U.S. 510, 522, 20 L. Ed. 2d 776, 784-85 (1968). The decision to excuse a prospective juror is within the discretion of the trial court because "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Wainwright v. Witt*, 469 U.S. at 425-26, 83 L. Ed. 2d at 852.

[4] First, we note that defendant never objected to the allegedly unconstitutional, hypothetical question of whether the prospective juror herself could vote to recommend the death penalty propounded by the prosecutor in the case of prospective jurors Rose and Smith, and by the trial court in the case of prospective jurors Tanner and Naylor. Since none of the prospective jurors was actually excused based on her response to this question, and since "[t]his Court is not required to pass upon a constitutional issue unless it affirmatively appears that the issue was raised and determined in the trial court," *State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985), we need not address defendant's allegation that this question is unconstitutional.

[5] Next, applying the *Wainwright* standard set out above, we conclude that the trial court did not abuse its discretion in excusing

these prospective jurors for cause. Since all four prospective jurors clearly demonstrated their inability to render a verdict in accordance with the laws of the state, the trial court did not abuse its discretion by granting the State's for-cause challenges. *See* N.C.G.S. § 15A-1212(8) (1997) (providing that a challenge for cause may be made on the grounds that, regardless of the facts and circumstances, a juror would be unable to render a verdict in accordance with the laws of North Carolina).

When the prosecutor asked Rose whether her "feelings about the death penalty would prevent or substantially impair the performance of [her] duty as a juror in accordance with the evidence and the law in this case," she responded, "Probably so." The State challenged her for cause, and defendant attempted to rehabilitate her; however, after watching and listening to the entire *voir dire* and then hearing Rose state that she was not sure if she could follow the court's instructions, the trial court determined that "we can belabor this all day and she's going to be in the same position. I'm going to excuse her." Thus, we hold that defendant has failed to demonstrate how the trial court abused its discretion in granting the State's for-cause challenge of Rose.

Prospective juror Smith informed the prosecutor that she would be unable to set aside her personal feelings about the death penalty and follow the instructions. She also told the trial court that she could not return a recommendation of death no matter what the evidence or the facts. Defendant attempted to rehabilitate her; however, when the prosecutor later asked Smith whether her "feelings about returning a death penalty verdict would prevent or substantially impair [her] ability to serve as a juror in accordance with the evidence and the law in a death penalty case," Smith replied, "Yes, sir." The trial court then granted the State's challenge for cause. On appeal defendant contends that he should have been afforded another opportunity to rehabilitate Smith. We cannot agree. Defendant never asked the trial court for another opportunity to question Smith; further, "defendant is not allowed to rehabilitate a juror who has expressed unequivocal opposition to the death penalty in response to questions propounded by the prosecutor and the trial court." *State v. Cummings*, 326 N.C. 298, 307, 389 S.E.2d 66, 71 (1990). Since Smith unequivocally stated that she could not recommend the death penalty under any circumstances, we hold that the trial court did not abuse its discretion in excusing her for cause.

The State challenged prospective juror Tanner after she indicated that "in no event and under no circumstances could [she] ever vote to return a death penalty regardless of what the evidence and the law might be." During rehabilitation Tanner replied that she could set aside her feelings and consider the death penalty. Nevertheless, she again told the prosecutor that her "feelings about the death penalty [would] prevent or substantially impair the performance of [her] duty as a juror in accordance with the evidence and the law in this case" and then told the trial court that she "could not return a recommendation that the defendant be sentenced to death no matter what the evidence or the facts were." Based on Tanner's *voir dire*, we hold that the trial court properly granted the State's challenge for cause.

Finally, defendant contends that prospective juror Naylor was improperly excused based on her ambivalence and equivocation regarding the death penalty. We disagree. Naylor stated that she might not be able to recommend a death sentence based on her religious principles and personal feelings and that these feelings could "prevent or substantially impair the performance of [her] duty as a juror in accordance with the evidence and the law in a case where the death penalty is an issue." Although she later indicated that she could consider both penalties, she then told the trial court that she did not know whether she could recommend the death penalty. The trial court found that Naylor was ambivalent and that "her personal and religious beliefs would impair, substantially impair her ability to follow the instructions" and granted the State's for-cause challenge. While the *voir dire* of this prospective juror may have indicated her ambivalence toward the death penalty, we hold that she was properly excused for cause because that testimony also demonstrated that she would be unable to render a verdict in accordance with the trial court's instructions and the laws of the state. *See State v. Benson,* 323 N.C. 318, 323, 372 S.E.2d 517, 520 (1988); *State v. Brown,* 320 N.C. 179, 189-90, 358 S.E.2d 1, 10, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

[6] Next, defendant argues that the trial court erred by permitting the State to "stake out" prospective jurors during *voir dire*. He contends that he was prejudiced by the prosecutor's informing prospective jurors that the vehicle into which defendant discharged his firearm was occupied by his wife and three small children. He further contends that the trial court erred by allowing the prosecutor to inadequately state the law regarding the felony-murder rule.

**STATE v. NOBLES**

[350 N.C. 483 (1999)]

This Court has repeatedly held that questions which attempt to "stake out" the jurors and determine what kind of verdict the jurors would render under a given set of circumstances are improper. *See State v. Robinson*, 339 N.C. 263, 273, 451 S.E.2d 196, 202 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). However, "[t]he nature and extent of the inquiry made of prospective jurors on *voir dire* ordinarily rests within the sound discretion of the trial court." *State v. Bond*, 345 N.C. 1, 17, 478 S.E.2d 163, 171 (1996), *cert. denied*, —— U.S. ——, 138 L. Ed. 2d 1022 (1997).

During *voir dire* in this case, the prosecutor consistently inquired whether prospective jurors knew or read anything about defendant's case; and in doing so the prosecutor noted that defendant was charged with discharging a firearm into an occupied vehicle, which at the time was occupied by his wife and three small children. At the one instance in which defendant objected to the mentioning of this uncontested fact, the trial court found that "the information that [the prosecutor] is seeking would trigger a memory [by the prospective juror] if she had any of it and I think that would be as much to [defendant's] benefit as to [the State's]." We conclude that this is not a stake-out question, since it does not seek "to discover in advance what a prospective juror's decision will be under a certain state of the evidence." *State v. Richmond*, 347 N.C. 412, 425, 495 S.E.2d 677, 683, *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 88 (1998). Furthermore, defendant failed to object to the prosecutor's mention of the fact that defendant's three children were in the vehicle at the time of the shooting, except during the *voir dire* of one prospective juror who was peremptorily excused by the State; the rule is that when defendant fails to object during trial, he has waived his right to complain further on appeal. *See State v. Strickland*, 290 N.C. 169, 180, 225 S.E.2d 531, 540 (1976).

[7] Likewise, we find no error in the prosecutor's outline of the felony-murder rule. During *voir dire* the prosecutor consistently informed prospective jurors that there are two ways that an individual can be guilty of first-degree murder: premeditation and deliberation or felony murder. The prosecutor routinely defined felony murder as a killing which occurs during the commission of a violent felony, such as discharging a firearm into an occupied vehicle. Defendant contends that by failing to inform prospective jurors of the State's burden of proving that defendant knew that the vehicle was occupied, the prosecutor inadequately stated the law. We disagree.

We note that defendant objected to only two instances during which the prosecutor discussed felony murder, and in both instances the prosecutor rephrased the question without objection. More important, though, an examination of the transcript reveals that the prosecutor's questions do not constitute inaccurate or inadequate statements of the law. An example of a felony for which a person can be found guilty of first-degree murder under the felony-murder rule is discharging a firearm into occupied property. *See* N.C.G.S. § 14-34.1 (1993). The prosecutor never intended, nor did defendant request the prosecutor, to list any elements of the offense. Moreover, defendant suffered no harm from the prosecutor's substitution of "vehicle" for "property" when using the crime as a sample felony. "[T]he questions certainly were not of such a character that the trial court's decision not to intervene *ex mero motu* constitutes an abuse of discretion." *State v. Jones*, 347 N.C. 193, 204, 491 S.E.2d 641, 648 (1997).

We hold that these questions did not seek to predetermine what kind of verdict prospective jurors would render; rather, they were designed to determine only if prospective jurors could follow the law and serve as impartial jurors. Therefore, defendant's assignment of error is meritless.

## GUILT-INNOCENCE PHASE

Defendant next contends that the trial court erred by allowing publication to the jury of portrait-style photographs of each of defendant and the victim's three children. Defendant submits that publication of these three photographs of the children constituted prejudicial victim-impact evidence and violated his constitutional rights.

[8] During his testimony the victim's father identified four photographs, one of the victim and one each of the victim's children; and the prosecutor requested that they be published to the jury. Defendant, through his counsel, objected; the trial court sustained the objection as to the photographs of the children, but allowed publication of the victim's photograph, to which defendant has not assigned error. When the trial court sustains an objection, the objecting party has no basis for appeal absent a motion to strike or a request for a curative instruction. *State v. Barton*, 335 N.C. 696, 709-10, 441 S.E.2d 295, 302 (1994). Although we note that the trial court did later permit the witness to display the children's photographs to the jury from the witness stand, defendant did not object to this ruling. In any event, defendant's contention that the trial court allowed

inadmissible victim-impact evidence is meritless. The publication of the children's photographs to the jury, along with their names and birth dates, did not constitute "testimony which in any way described how the defendant's crimes impacted the victim's family and friends." *State v. Lee*, 335 N.C. at 279, 439 S.E.2d at 565. Thus, defendant's argument is dismissed.

In his next argument, defendant contends that the trial court erred by admitting hearsay evidence over his objection and by failing to intervene *ex mero motu* to prevent improper argument by the prosecution based upon that evidence.

[9] The challenged evidence concerns the relationship between defendant and the victim as testified to by seven witnesses. In addition to arguing that the testimony was inadmissible hearsay, defendant argues that the testimony was irrelevant. However, this Court has held that when a husband is charged with the murder of his wife, the State is permitted to present evidence of "frequent quarrels . . . and ill-treatment . . . as bearing on intent, malice, motive, premeditation and deliberation." *State v. Syriani*, 333 N.C. 350, 377, 428 S.E.2d 118, 132, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993); *see also State v. Scott*, 343 N.C. 313, 331, 471 S.E.2d 605, 616 (1996) (concluding that defendant's frequent arguments with the victim were admissible). Therefore, we reject defendant's argument that the evidence was irrelevant.

[10] Defendant first complains about the testimony of Duplin County Magistrate C.A. Miller. Miller testified, over objection, to the victim's statements regarding defendant's 23 August 1996 assault on her which resulted in an arrest warrant being issued against defendant. Defendant also objected to this arrest warrant being introduced into evidence and portions of it being read to the jury. In addition, defendant objected to the introduction of, and subsequent testimony regarding, a criminal summons against defendant for communicating threats to the victim, a warrant for domestic criminal trespass, and a judgment showing that defendant pled guilty in both cases.

Defendant is correct that, generally, allegations for and the contents of a warrant are inadmissible at trial as hearsay. *See State v. Wilson*, 322 N.C. 117, 137, 367 S.E.2d 589, 601 (1988). However, only general objections were lodged against the admission into evidence of the State's exhibits and succeeding testimony. Defendant stated the basis only for his objection to the reading of the domestic tres-

pass warrant, and the basis proffered was relevancy; but we have already stated that this evidence was relevant. Therefore, the objections are insufficient to preserve this issue for appellate review. *See State v. Robinson*, 339 N.C. at 276, 451 S.E.2d at 204.

Even assuming *arguendo* that defendant has properly preserved this issue, he is still not entitled to a new trial. During cross-examination of Miller, defendant elicited information regarding the assault on 23 August 1996; moreover, when defendant took the stand, he testified, on both direct and cross-examination, regarding the information that was contained in the summons and warrants. Furthermore, Edna Walker, the daughter of the victim's neighbor, later testified at length, without objection, regarding the 23 August 1996 assault. "It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character." *State v. Campbell*, 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979); *see also State v. Hunt*, 325 N.C. 187, 196, 381 S.E.2d 453, 459 (1989); *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984).

Defendant further challenges the admission of hearsay statements made by the victim to six different witnesses. These witnesses were rebuttal witnesses for the State. They testified to various domestic violence incidents between defendant and the victim and were called to, *inter alia*, rebut defendant's assertion that only once had he put his hands on the victim.

[11] During the testimony of Nannette Smith, defendant objected only once on the grounds of hearsay; and the trial court ruled that the testimony had "already been testified to." At other times defendant did not object on the grounds of hearsay, nor has defendant alleged plain error to the admission of other alleged hearsay evidence during Smith's testimony. Accordingly, defendant has waived appellate review of this issue. *See State v. Scott*, 343 N.C. at 332, 471 S.E.2d at 616 (holding that a question to which defendant did not object at trial or to which plain error has not been alleged has not been properly preserved for appellate review).

[12] Next, Ronald Trotter, the victim's brother, testified. Although defendant objected on numerous occasions, most of the objections were sustained or overruled on the basis that the same or similar evidence had been previously admitted. We hold that, as to the remaining hearsay objections, they were properly overruled by

the trial court since the statements reflected the victim's state of mind and were therefore admissible under Rule 803(3). *See* N.C.G.S. § 8C-1, Rule 803(3) (1992); *State v. Murillo*, 349 N.C. 573, 587, 509 S.E.2d 752, 760 (1998). By failing to object or allege plain error, defendant has again waived appellate review to the remainder of Trotter's testimony.

**[13]** Next, Delphine Smith testified regarding an incident when defendant broke the windows in the house, and the flying glass injured one of defendant's children. The only applicable objection defendant made was lodged after Smith had already responded to the question, and defendant made no motion to strike the answer. Thus, defendant has waived the objection, *see State v. Burgin*, 313 N.C. 404, 409, 329 S.E.2d 653, 657 (1985), as well as further appellate review by failing to assign plain error.

Defendant also complains about certain testimony by Donald Brinson. However, defendant neither objected to this question nor alleged plain error; therefore, he has waived this argument. *See State v. Scott*, 343 N.C. at 332, 471 S.E.2d at 616. Likewise, during direct examination of Gregory Brinson and Edna Walker, defendant failed to object or to assign plain error to questions regarding alleged hearsay statements made by the victim to these witnesses. Accordingly, defendant's argument has not been properly preserved for appellate review. *See id.*

Finally, defendant argues that the trial court should have intervened *ex mero motu* to prevent the prosecution from making improper arguments to the jury based on the inadmissible hearsay evidence. Defendant does not refer this Court to any particular transcript pages containing allegedly improper remarks as required by Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure; however, a review of that portion of the prosecution's closing argument based on the allegedly inadmissible hearsay evidence reveals no gross impropriety requiring the trial court to intervene *ex mero motu*. *See State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998) (holding that when defendant fails to object at trial, the standard of review is whether the argument was so grossly improper that the trial court erred in failing to intervene *ex mero motu*). Moreover, since we have previously rejected defendant's argument that the evidence was improperly admitted, the prosecution was permitted to base its argument upon this evidence. *See State v. Anderson*, 322 N.C. 22, 37, 366 S.E.2d 459, 468 (stating that "[c]ounsel may argue the facts in evi-

dence and all reasonable inferences that may be drawn therefrom"), *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988). Accordingly, this assignment of error is overruled.

**[14]** By other assignments of error, defendant contends that the trial court violated his constitutional and statutory rights by denying his motion to suppress, by overruling his objections to irrelevant and unfairly prejudicial evidence of alleged threats to others, and by failing to intervene *ex mero motu* to prevent improper argument based upon that evidence.

The trial court granted defendant's motion *in limine* to bar testimony as to specific instances of defendant's alleged criminal acts against someone other than the victim. Nonetheless, defendant alleges that the trial court allowed testimony regarding alleged threats and violent conduct directed against various members of the victim's family. These assignments of error are deemed waived for failure to comply with the Rules of Appellate Procedure.

> Under Rule 28(d)(1), when the transcript of proceedings is filed pursuant to Rule 9(c)(2), the appellant must attach as an appendix to its brief either a verbatim reproduction of those portions of the transcript necessary to understand the question presented or those portions of the transcript showing the questions and answers complained of when an assignment of error involves the admission or exclusion of evidence. N.C. R. App. P. 28(d)(1)(a), (d)(1)(b). Alternatively, Rule 28(d)(2)(a) provides that when the portion of the transcript necessary to understand the question presented is reproduced verbatim in the body of the brief, appendices to the brief are not required. N.C. R. App. P. 28(d)(2)(a).

*State v. Call*, 349 N.C. 382, 408, 508 S.E.2d 496, 513 (1998). As in *Call*, defendant cites only various transcript pages and fails either to attach the pertinent portions of the transcript or to include a verbatim reproduction in his brief of the specific questions and answers which he wants this Court to review for error. *See id.* at 408-09, 508 S.E.2d at 513. We acknowledge that defendant reproduces a portion of the prosecutor's allegedly improper jury argument in his brief; however, he fails to advance any argument or cite any authority regarding any impropriety as required by the Rules of Appellate Procedure. *See* N.C. R. App. P. 28(a), (b)(5). Accordingly, these assignments of error have been waived and are overruled.

Defendant next contends that the trial court erred by denying his motions to dismiss the charges of discharging a firearm into an occupied vehicle, to consolidate these charges, and to set aside the verdict with respect to these charges.

. On 28 October 1996 defendant was indicted for four counts of discharging a firearm into an occupied vehicle. On 18 July 1997 defendant was indicted for three additional counts of discharging a firearm into an occupied vehicle. Although at trial defendant moved to dismiss all charges at the close of all the evidence, defendant has abandoned review as to the four original charges of discharging a firearm into an occupied vehicle since he makes no argument on those charges in his brief. N.C. R. App. P. 28(b)(5). Defendant argues that there was insufficient evidence of the additional charges to go to the jury; thus, defendant submits that the trial court erred by denying his motion to dismiss these three charges.

In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom. *See State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). The State must present substantial evidence of each element of the offense charged. *See id.* "[T]he trial court should consider all evidence actually admitted, whether competent or not, that is favorable to the State." *State v. Jones*, 342 N.C. 523, 540, 467 S.E.2d 12, 23 (1996). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied," *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988); however, if the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed," *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983).

[15] The offense of discharging a firearm into an occupied vehicle requires, *inter alia*, that a person willfully or wantonly discharge a firearm into a vehicle while it is occupied. *See* N.C.G.S. § 14-34.1 (1993). However, defendant's sole contention is that the State presented insufficient evidence to support seven distinct charges of discharging a firearm into an occupied vehicle. Defendant bases this assertion on the fact that witnesses testified that they heard only four gunshots and that only four shell casings were recovered at the scene of the crime.

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we conclude that substantial evidence exists that defendant discharged his firearm into the victim's truck seven times. The State's evidence at trial tended to show the existence of seven bullet holes in the victim's vehicle. There were two bullet holes in the windshield, one near the middle of the windshield and one near the edge of the windshield on the passenger's side; there was a bullet hole below the windshield on the driver's side and one near the headlight on the driver's side; there was a bullet hole on the top of the truck's bed on the driver's side and one in the bed of the truck; and the driver's side door window was burst, which, based on the evidence, was caused by the fatal gunshot to the victim. Defendant's firearm had the capacity to hold nine bullets and was empty at the murder scene. Further, a State's witness testified that as of four o'clock on the day of the murder, the truck did not have any bullet holes or broken glass. Based on this evidence, we conclude that the trial court did not err in denying defendant's motion to dismiss the three additional charges of discharging a firearm into an occupied vehicle.

[16] Defendant further argues that the trial court erred by denying his motion to consolidate these charges. However, as discussed above, the evidence tended to show that defendant's actions were seven distinct and separate events. "Each shot, fired from a pistol, as opposed to a machine gun or other automatic weapon, required that defendant employ his thought processes each time he fired the weapon. Each act was distinct in time, and each bullet hit the vehicle in a different place." *State v. Rambert*, 341 N.C. 173, 176-77, 459 S.E.2d 510, 513 (1995). Therefore, we conclude that the trial court properly denied defendant's motion to consolidate the charges of discharging a firearm into an occupied vehicle.

Finally, defendant argues that the trial court erred by denying his motion to set aside the verdict with respect to the three additional charges. The scope of this Court's review on appeal, however, "is confined to a consideration of those assignments of error set out in the record on appeal." N.C. R. App. P. 10(a). Such assignments of error are sufficient only when they direct "the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." N.C. R. App. P. 10(c)(1). While the assignment of error addressing this argument in defendant's brief does contain references to the transcript, none of these referenced transcript pages indicate that defendant moved to

set aside the verdict; thus, this portion of the question presented is not properly before this Court.

**[17]** Defendant next contends that the trial court's failure to conduct the jurors to the courtroom following a request by the jurors constitutes reversible error. We disagree.

During deliberations at the guilt-innocence phase, the jury sent a note to the trial court requesting certain items of evidence. The trial court, after discussing with both parties which items were the subject of the request, in its discretion and with the consent of both parties, granted the jury's request. We agree with defendant that the trial court erred by failing to conduct the jury to the courtroom; however, we disagree with defendant that this error entitles him to a new trial.

N.C.G.S. § 15A-1233(a) mandates that "[i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom." Although he did not object to the failure of the trial court to conduct the jury to the courtroom, defendant is not precluded from raising this issue on appeal. *See State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). Since "no instructions were given by the trial court to fewer than all jurors," no constitutional violations exist. *State v. McLaughlin*, 320 N.C. 564, 570, 359 S.E.2d 768, 772 (1987); *see also State v. Nelson*, 341 N.C. 695, 701, 462 S.E.2d 225, 228 (1995); *State v. Ashe*, 314 N.C. at 36, 40, 331 S.E.2d at 657, 659. In order to be entitled to a new trial, defendant must demonstrate that there is a reasonable possibility that a different result would have been reached had the trial court's error not occurred. *State v. McLaughlin*, 320 N.C. at 570, 359 S.E.2d at 772. Defendant cannot meet this burden. Not only did defendant's counsel agree with the trial court when it erroneously thought that it had discretion whether to bring the jury to the courtroom, but there was unanimous agreement among the State, the defendant, and the trial judge concerning the items requested by the jury; and the prosecution and defendant consented to permitting the jury to have those items. Therefore, defendant has not met his burden of showing prejudice as a result of the trial court's failure to follow the requirements of N.C.G.S. § 15A-1233(a). In his brief, defendant also contends that the trial court erred regarding a subsequent jury request for documents. However, defendant's assignment of error contains no mention of this incident; thus, it is beyond our scope of review. *See* N.C. R. App. P. 10(c)(1), 28(b)(5). In any event, the trial court brought the

jury back into the courtroom and followed the statutory requirements of N.C.G.S. § 15A-1233. We perceive no prejudice to defendant from the trial court's granting of the jury's subsequent request. Accordingly, this assignment of error is overruled.

[18] In his next argument, defendant contends that the trial court erred by denying his motions for mistrial and by instructing the jury to continue deliberations despite being deadlocked. Defendant argues that the trial court's coercion of the jury into reaching a verdict along with the victim's father's comments entitle him to a new trial.

The jury began deliberations around mid-afternoon on Tuesday, 2 September 1997. Later that afternoon the jury requested to see certain exhibits; still later that day the jury came back into the courtroom to ask a question. The trial court then recessed until 9:00 a.m. Wednesday. During the morning of 3 September 1997, the jury requested to see further exhibits; and after lunch the jury asked for the charge on first-degree felony murder and murder based on malice, premeditation, and deliberation. Subsequently, the jury sent a note to the trial court, was conducted back to the courtroom, and the following discussion occurred:

THE COURT: All right. Madame Foreman, I understand that from your note that you're having difficulty in arriving at a verdict. Is that correct?

FOREPERSON: Yes, sir.

THE COURT: Is this a difficulty that you think further deliberations will assist? In other words, do you think if you all deliberate more, you can sort of hang this thing out?

FOREPERSON: I doubt it.

THE COURT: All right. Well, then without asking you, you know, exactly what the verdict that you're considering are [sic], what kind of a numerical division do you have? Don't tell me which way it is but I mean five to seven, six to six?

FOREPERSON: Ten to two.

THE COURT: All right. Well, now, ladies and gentlemen, to be quite honest with you, you've, you know you've deliberated what I know seems to be a long time for you but for this type of case, this is not an ordinately long period of deliberations.

But I'm going to reread you a part of the instructions that I gave you earlier.

Now, as jurors, you all have [a] duty to consult with one another and to deliberate with a view towards reaching an agreement. If it can be done without violence to individual judgment. Each of you must decide the case for yourselves, however. But only after an impartial consideration on the evidence with your fellow jurors. In the course of your deliberation, you should not hesitate to re-examine your own views and change your opinion if you're convinced that you are in error but none of you should surrender your honest conviction as to the weight or effect of the evidence solely for the purpose of satisfying the opinion of a fellow juror or . . . solely for the purpose of returning a verdict. Your verdict should speak the truth. Your vote should speak your truth. Now, having said that, I'm going to ask that you return to the jury room and do a little bit more deliberating. And, you know, if you can resolve your differences. If you cannot honestly do it, well, so be it. I don't want you to think that I'm trying to force you into a verdict. That is not the purpose of the remarks I gave you. Do you understand that?

. . . .

. . . Well let's let them deliberate another thirty minutes or so and then we'll take their temperature. You know, I don't object to coming, you know coming back tomorrow. We'll just have to see.

Since the jury had not reached a verdict, the trial court recessed for the evening.

On Thursday morning the jury was escorted into the courtroom; but before the trial court had an opportunity to ask the jury to resume deliberations, defendant interrupted.

THE COURT: All right. Well, I'm going to ask that you return to your jury room and resume your deliberations. Remember the instructions—

MR. NOBLES [defendant]: I'm not going to be quite [sic]. Okay. Judge—

MR. ANDREWS [prosecutor]: Your Honor—

MR. NOBLES: I'm not going to sit idly by—

THE COURT: Sir, you're going to be quiet as long as the jury's present.

MR. NOBLES: And, let them railroad me into a death sentence. Okay. I mean I have the stuff right here—and I'm

THE COURT: Take the jury—take the jury, take the jury out.

MR. NOBLES: I'm not going to do it. I'm not going to let them sit here and railroad me into a death sentence.

(Jury is returning to the jury room.)

MR. TROTTER [victim's father]: You're not being railroaded. You—

THE COURT: Sir, you sit. You sit down.

THE BAILIFF: You could be put in jail.

MR. NOBLES: God have mercy.

THE BAILIFF: Calm down.

MR. NOBLES: I pray for you and you seek my end. God have mercy.

(Defense counsel trying to speak with defendant.)

MR. NOBLES: I'm not going to hush.

THE BAILIFF: Get some backup.

(JURY IS OUT OF THE COURTROOM)

Out of the presence of the jury, defendant expressed his thoughts to the trial court; and the jury was again brought back to the courtroom, only to be interrupted again by defendant.

(Jury returns to the courtroom.)

MR. NOBLES: The fact that I was handcuffed to a floor for eleven hours and then they said up there I never gave a statement.

THE COURT: Sir, you will be quiet while the jury is in.

MR. NOBLES: It's a railroad job. That's all it is.

Following this exchange the jury was reinstructed by the trial court and sent back for deliberations. Defense counsel then moved for a mistrial based on the jury's failure to reach a verdict after almost ten

hours of deliberations over three days and the courtroom outburst precipitated by defendant, which included a response from the audience. The trial court denied the motion. When the court next reconvened the jury in the courtroom, the following colloquy ensued:

> THE COURT: All right. Madame Foreman, I am now inquiring as how you folks are coming towards reaching a verdict. Are you still where you started?
>
> FOREMAN: Eleven to one.
>
> THE COURT: Okay. Now, do you think further deliberations would enable you to reach a verdict?
>
> FOREMAN: It's kind of tough to say.
>
> THE COURT: What about the rest of you?
>
> JUROR NUMBER TEN: Possibly.
>
> THE COURT: You know, like I say, we're not trying to force you into any kind of verdict nor are we trying to make anybody forget or overrule their own deeply held convictions. And, the reason for my inquiry is you know to as to whether we do need to resume deliberations or not.
>
> JUROR NUMBER NINE: We do. We do need to resume.

The trial court then recessed for lunch, and at 2:00 p.m. the jury resumed deliberations. Shortly thereafter the jury returned its verdicts. At defendant's request the jurors were polled, and all assented to the verdicts. In all the jury had deliberated approximately eleven hours, spanning three days.

In determining whether the trial court coerced a verdict by the jury, this Court must consider the totality of the circumstances. *See State v. Porter*, 340 N.C. 320, 335, 457 S.E.2d 716, 723 (1995). "An inquiry as to a division, without asking which votes were for conviction or acquittal, is not inherently coercive. Without more, it is not a violation of the defendant's right to a jury trial." *State v. Beaver*, 322 N.C. 462, 464, 368 S.E.2d 607, 608 (1988). Some of the factors to be considered include whether the trial court conveyed the impression that it was irritated with the jury for not reaching a verdict, whether the trial court intimated that it would hold the jury until it reached a verdict, and whether the trial court told the jury that a retrial would burden the court system. *See id.* The record demonstrates that the trial court did none of these things. The fact that the jury delibera-

tions lasted nearly eleven hours and spanned three days does not show that the trial court coerced a verdict. *See id.* at 465, 368 S.E.2d at 609.

Likewise, we find no merit to defendant's argument that the trial court erred in denying his motion for mistrial due to deadlock. "Whether to grant a motion for mistrial is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion." *State v. McCarver,* 341 N.C. 364, 383, 462 S.E.2d 25, 36 (1995), *cert. denied,* 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). After discovering that the jury was having difficulty reaching a verdict, the transcript reveals that the trial court properly reinstructed the jury as to its duty under N.C.G.S. § 15A-1235(b) to consult with one another, to decide for oneself, to reexamine one's views if necessary, but not to surrender one's honest convictions. The trial court then asked the jury to continue deliberating, and soon thereafter the court recessed for the evening. The next morning the jury continued deliberating, and shortly before lunch the jury informed the trial court that further deliberations might be worthwhile. Not long after the lunch recess, the jury reached it verdicts.

The statements of the jurors and their subsequent actions validate the trial court's conclusion that further deliberations would be worthwhile. When the totality of the circumstances are considered, and giving proper deference to the trial court's discretion, we conclude that the trial court did not abuse its discretion by denying defendant's motion for mistrial. *See State v. Porter,* 340 N.C. at 337, 457 S.E.2d at 724-25. The decision to convict a person of first-degree murder and six counts of discharging a firearm into an occupied vehicle is a serious matter; considerable deliberation is warranted.

[19] Further, defendant argues that the remarks by the victim's father from the audience during jury deliberations prejudiced his case. According to N.C.G.S. § 15A-1061, "[t]he judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." The jury heard one statement from the victim's father in response to defendant's contention that he was being railroaded; defendant failed to request any type of curative instruction. We hold that the outburst was not so prejudicial to defendant as to render the denial of the motion for mistrial a manifest abuse of dis-

cretion reversible on appeal. *See State v. Ward*, 338 N.C. 64, 93, 449 S.E.2d 709, 724 (1994), *cert. denied*, 514 U.S. 1134, 131 L. Ed. 2d 1013 (1995). Furthermore, we find no merit to defendant's contention that the trial court violated its statutory duty to make a true, complete, and accurate record of his trial. *See* N.C.G.S. § 15A-1241. Defendant's assignments of error are overruled.

[20] Next, defendant contends that the trial court erred by denying his motion to repoll a hesitant juror individually and his alternative motion to repoll the entire jury. Defendant argues that juror Edith Pope had difficulty assenting to the guilty verdict during the jury poll and that the denial of his motions to repoll entitles him to a new trial. We disagree.

The transcript reveals that during the polling of the jury, juror Pope did not respond for a few seconds after being asked, "Is this still your verdict? Do you still assent thereto?" She then responded, "Yes." Following the jury poll, defendant requested that juror Pope "be polled individually and outside the presence of the other jurors." The trial court denied the motion, but allowed defendant until Monday morning to present authority for his request to individually repoll juror Pope outside the presence of the other jurors.

At trial and in his brief before this Court, defendant failed to cite any authority or put forth any argument in support of his motion to have juror Pope polled individually and outside the presence of the other jurors. As such, this contention is deemed abandoned. *See State v. Locklear*, 349 N.C. 118, 165, 505 S.E.2d 277, 305 (1998) (holding that, pursuant to N.C. R. App. P. 28(b)(5), assignments of error not supported by reason, argument, or authority will be taken as abandoned), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— (Apr. 19, 1999) (No. 98-8310).

[21] Moreover, defendant also waived his right to repoll the entire jury. N.C.G.S. § 15A-1238 grants defendant the right to have the jury polled before the jury has dispersed. In this case, the jury was polled, defendant's request to have juror Pope repolled individually and outside the presence of the other jurors was denied, and the court was recessed for the weekend. After being dispersed for the weekend, defendant made his alternative motion to repoll the entire jury on Monday morning. Defendant waived his right to repoll the jury by failing to make a timely motion. *See State v. Black*, 328 N.C. 191, 198, 400 S.E.2d 398, 403 (1991) (holding that giving the jury a thirty-minute break means the jury has been "dispersed" within the meaning of

N.C.G.S. § 15A-1238). Further, the record does not support defendant's intimation that the trial court did not accept the verdict and that the verdict was not final. This assignment of error is without merit.

[22] By his next contention defendant argues that the trial court failed to exercise discretion or abused its discretion in excusing juror Jodie Williams for hardship following the verdict in the guilt-innocence phase and prior to the sentencing proceeding of his trial.

After completion of the guilt-innocence phase, juror Williams, who was pregnant, gave the trial court a note from her physician that she needed to be excused from jury duty on account of stress. The trial judge informed the parties that he did not know if we have "a whole lot of choice." After juror Williams indicated that her physician told her that jury duty could cause problems with her pregnancy, the trial judge excused her for medical reasons, noting, "Well, I don't see that I have much choice, gentlemen." Defendant objected for the record.

First, defendant contends that the trial court failed to exercise discretion in excusing juror Williams since the record reveals that it repeatedly stated that it had "no choice" regarding juror Williams' request. We disagree. N.C.G.S. §§ 15A-1215(a) and 15A-2000(a)(2) provide that an alternate juror may replace any juror who "dies, becomes incapacitated or disqualified, or is discharged for any reason" before the jury begins its deliberations on the issue of penalty. The trial court never stated that it had "no choice." Instead, given juror Williams' medical condition, the trial court determined that it did not have "much choice" or "a whole lot of choice." We hold that the record demonstrates that the trial court did exercise its discretion in excusing juror Williams.

[23] Next, defendant argues that the trial court abused its discretion by excusing juror Williams. As previously stated, N.C.G.S. § 15A-2000(a)(2) expressly permits the replacement of a juror after the guilt-innocence phase and prior to the sentencing proceeding. Moreover, in State v. Nelson, 298 N.C. 573, 593, 260 S.E.2d 629, 644 (1979), cert. denied, 446 U.S. 929, 64 L. Ed. 2d 282 (1980), we held that the trial court "has broad discretion in supervising the selection of the jury . . . [and that i]t is within the trial court's discretion to excuse a juror and substitute an alternate at any time before final submission of the case to the jury panel." Thus, we detect no abuse of discretion from the trial court's decision to excuse a juror whose physician had determined that jury duty could cause complications with her preg-

nancy. *See State v. Holden*, 321 N.C. 125, 151-52, 362 S.E.2d 513, 530 (1987) (holding no abuse of discretion where trial court found that it had "no alternative but to dismiss" juror after guilt phase upon learning that juror would not impose the death sentence under any circumstances), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988); *see also State v. Davis*, 325 N.C. 607, 628, 386 S.E.2d 418, 429 (1989) (ascertaining no abuse of discretion in judge's decision to replace juror who had child-care problems, after both parties had presented all their evidence in guilt-innocence phase), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990); *State v. McLaughlin*, 323 N.C. 68, 101, 372 S.E.2d 49, 70 (1988) (failing to find an abuse of discretion where juror excused between guilt-innocence phase and sentencing proceeding was distraught and highly emotional), *cert. denied*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990).

Finally, defendant appears to argue that the excusal of juror Williams was arbitrary since the trial court refused to excuse juror Jonathan Stegal when he presented a note from his physician that jury duty could cause medical complications. However, the record reveals that the trial court took steps to ensure that being on the panel would not create any serious health problems to juror Stegal; and since defendant did not object to juror Stegal remaining on the panel, it can only be assumed that juror Stegal was not at medical risk. Further, defendant has not assigned as error the failure to excuse juror Stegal; therefore, any argument related to this issue is deemed abandoned. *See* N.C. R. App. P. 28(b)(5). Thus, we find no merit to defendant's argument.

## SENTENCING PROCEEDING

In another assignment of error, defendant contends that the trial court erroneously instructed the jury regarding one of the aggravating circumstances submitted. Defendant argues that the trial court's instruction relieved the State of its burden to prove each element of the (e)(10) aggravating circumstance, that "[t]he defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." N.C.G.S. § 15A-2000(e)(10) (1997).

[24] Defendant did not object to these instructions at trial; our review, therefore, is limited to review for plain error. *See* N.C. R. App. P. 10(c)(4). Although in his assignment of error he "specifically and distinctly contended" pursuant to Rule 10(c)(4) of the Rules of Appellate Procedure that the error amounted to plain error, defend-

ant failed to argue in his brief that the trial court's instruction amounted to plain error. *See* N.C. R. App. P. 28(a), (b)(5). Accordingly, defendant has waived appellate review of this assignment of error. *See State v. King,* 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995). Nevertheless, we elect in our discretion under Rule 2 of the North Carolina Rules of Appellate Procedure to review defendant's contention based on plain error. *See State v. Williams,* 350 N.C. 1, 10, 510 S.E.2d 626, 633 (1999); *State v. Adams,* 347 N.C. 48, 62, 490 S.E.2d 220, 227 (1997), *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 878 (1998); *State v. Holden,* 346 N.C. 404, 434-35, 488 S.E.2d 514, 530-31 (1997), *cert. denied,* —— U.S. ——, 140 L. Ed. 2d 132 (1998). "In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. Holden,* 346 N.C. at 435, 488 S.E.2d at 531.

[25] During the capital sentencing proceeding, the trial court instructed the jury regarding the (e)(10) aggravating circumstance as follows:

> The second aggravating circumstance which you may consider is did the defendant knowingly create a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person? A defendant does so, if, at the time he kills he is using a weapon and the weapon would normally be hazardous to the lives of more than one person, and that the defendant uses it in such a way as to create a risk of death to more than one person and the risk is great and the defendant knows that he is thereby creating such a risk. I instruct you that a Lorcin 380 caliber semi-automatic pistol is a weapon which would normally be hazardous to the lives of more than one person. If you find from the evidence beyond a reasonable doubt that when the defendant killed the victim he was using a weapon and that this weapon would normally be hazardous to the lives of more than one person and that the defendant used the weapon and thereby created a risk of death to more than one person and that the risk was great and that the defendant knew that he was thereby creating such a great risk, you would find this aggravating circumstance and would so indicate by having your foreperson write, "Yes," in the space after this aggravating circumstance on the "Issues and Recommendation" form. If you do not so find, or have a reasonable doubt as to one

or more of these things, you will not find this aggravating circumstance, and will so indicate by having your foreperson write, "No," in that space.

Defendant relies on *State v. Davis*, 349 N.C. 1, 506 S.E.2d 455 (1998), in support of his position that the trial court's instructions relieved the State of its burden to prove each and every element of the (e)(10) aggravating circumstance. *See State v. White*, 300 N.C. 494, 499, 268 S.E.2d 481, 485 (1980) (holding that principles of due process require the State to prove beyond a reasonable doubt every essential element of the charged crime) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508 (1975)). We agree.

In *Davis* this Court held that "the jury must determine whether the weapon in its normal use is hazardous to the lives of more than one person." *State v. Davis*, 349 N.C. at 48-49, 506 S.E.2d at 481. However, in the case *sub judice* the trial court's instruction that "a Lorcin 380 caliber semi-automatic pistol is a weapon which would normally be hazardous to the lives of more than one person" effectively took from the jury's consideration whether the weapon used in this case is normally hazardous to the lives of more than one person. We conclude that this error relieved the State of its burden to prove this element of the aggravating circumstance in violation of due process principles; further, the trial court's instructions constituted plain error. Accordingly, defendant is entitled to a new capital sentencing proceeding.

**[26]** We now address one further issue raised by the parties since it is likely to arise again at defendant's new sentencing hearing. Defendant contends that the trial court erroneously overruled his objection to the prosecution's improper jury argument during the sentencing proceeding. During his jury argument the prosecutor, in an attempt to rebut defendant's mitigating circumstances related to defendant's home environment, argued as follows:

Who might be the best person in the world to testify about his home situation? His mother, who lives out there on Paul Ed Dail Road. She wouldn't even come up here.

MR. HALL [defense counsel]: Objection.

THE COURT: Well,—

MR. ANDREWS [prosecutor]: I'll rephrase it, Your Honor.

THE COURT: Okay. Please do.

Mr. Andrews: She didn't even come up here to testify—

Mr. Hall: Objection.

Mr. Andrews: On his behalf.

The Court: Overruled at this point.

Mr. Andrews: His own mother. Does that say something to you about whether or not these flimsy mitigating circumstances are really true or not?

Thus, the prosecution left the jury to infer that had defendant's mother testified, it would not have been beneficial to her son's case. Although the record is silent as to the reasons why defendant's mother did not testify, extenuating circumstances appear to have existed. In any event, the insinuation made by the prosecutor was not supported by the record.

> It is fair to say that the average jury, in a greater or less[er] degree, has confidence that these obligations [of fairness], which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 1321 (1935). Thus, defendant suffered prejudice when the trial court erroneously overruled his objection to the prosecutor's impermissible line of argument.

We do not pass on defendant's other assignments of error as the questions they pose may not arise at a new sentencing proceeding. We conclude that the guilt-innocence phase of defendant's trial was free from prejudicial error. However, we also conclude that the trial court committed reversible error during the sentencing proceeding by erroneously instructing the jury regarding the (e)(10) aggravating circumstance. Therefore, we vacate defendant's death sentence and remand for a new capital sentencing proceeding.

NO ERROR IN GUILT-INNOCENCE PHASE; DEATH SENTENCE VACATED; REMANDED FOR NEW CAPITAL SENTENCING PROCEEDING.