STATE OF NORTH CAROLINA
v.
MARVIN ESTRADA.
No. COA08-1293.
Court of Appeals of North Carolina.
Filed May 19, 2009.
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Kathleen M. Waylett, for the State.
J. Clark Fischer for defendant-appellant.
STEELMAN, Judge.
The trial court's allowing a witness to ask two questions from the witness stand was not subject to plain error review. The trial court's instructions and questions to the jury during the course of their deliberations were not coercive.

I. Factual and Procedural Background
On the night of 17 March 2007, Edwin Ruiz (Ruiz) drove his pickup truck to defendant's apartment. Ruiz and defendant were both from Honduras and knew each other through work. While at the apartment, defendant became angry with Ruiz, accusing Ruiz of "wooing his brother [Wilson's] wife." Ruiz denied the allegations. Defendant's cousin, Breiner (Breiner), grabbed Ruiz by his shirt collar and threw him down to the floor where defendant and Breiner hit Ruiz in the face and stomach. Ruiz left the apartment.
Before going home, Ruiz stopped by Wilson's house. Ruiz knocked on the door, but Wilson refused to let him inside. Defendant and Breiner arrived and told Ruiz to leave. Defendant told Ruiz that if he did not leave, they would beat him up again and would kill him. Ruiz returned to his truck, remembered he was to meet his brother at Club Rumba, and then drove to the club. Ruiz did not see his brother at the club so he decided to leave. When Ruiz stopped in the club parking lot, the passenger side door of his truck opened, and the dome light came on. He turned quickly toward the passenger side of the truck and saw defendant and a pistol. Defendant shot him, and Ruiz fell forward. Ruiz spent one and a half months in the hospital and cannot walk or feed himself without assistance.
A jury found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury. The trial court sentenced defendant to an active term of 98 to 127 months imprisonment. Defendant appeals.

II. Questions by Witness
In his first argument, defendant contends that the trial court committed plain error when it allowed Ruiz to ask two questions while on the stand and in front of the jury. During redirect examination, the prosecutor asked Ruiz a question concerning a name mispronunciation defense counsel had made during cross-examination. In her question, the prosecutor referred to defense counsel byname, Mr. Frazier. Ruiz stated that he had a question, and the trial court allowed Ruiz to ask the question. Ruiz asked the prosecutor who was the "Mr. Frazier" to whom she had referred. The prosecutor explained that Mr. Frazier was the attorney who had asked Ruiz questions on cross-examination. With that clarification, re-direct examination resumed.
During recross-examination of Ruiz, Ruiz stated that he had a question. The trial court stated that, in its discretion, it would let the witness ask a question. Ruiz than asked, "Why are these people in [the courtroom]." The trial court suspended the questioning and conferred with counsel off the record. The trial court then explained to Ruiz that the people in the courtroom were spectators and that our rules allow for an open courtroom so that anyone may observe the trial. Thereafter, recross-examination of Ruiz continued.
Defendant did not object to Ruiz's questions, the trial court's decision to allow the questions, or the answers to Ruiz's questions. "[T]he rule is that when defendant fails to object during trial, he has waived his right to complain further on appeal." State v. Nobles, 350 N.C. 483, 498, 515 S.E.2d 885, 895 (1999). Defendant contends that this error constitutes plain error, citing Rule 10(c)(4) of the North Carolina Rules of Appellate Procedure, which states:
In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.
N.C.R. App. P. 10(c)(4) (2009). However, our Supreme Court "has not applied the plain error rule to issues which fall within the realm of the trial court's discretion . . . ." State v. Steen, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000), cert. denied, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). Furthermore, our Supreme Court has chosen "to review such unpreserved issues for plain error when . . . the issue involves either errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence."State v. Cummings, 346 N.C. 291, 313-14, 488 S.E.2d 550, 563 (1997), cert. denied, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). Accordingly, because defendant failed to object to the witness's question or the trial court's rulings, defendant's argument is waived and cannot be resurrected through plain error analysis.
This argument is without merit.

III. Instructions to Jury During Course of Deliberations
In his next argument, defendant raises two arguments concerning jury instructions given by the trial court after the jury began its deliberations. The jury went to the jury room to begin deliberations on the afternoon of Friday, 16 June 2008. Thereafter, the jury sent the trial court a message asking how long they would be deliberating that day and if they could contact family members to let them know where they were. The trial court discussed with counsel how to respond to the jury's questions. The trial court brought the jury into the courtroom and stated: I feel that if we reach the hour of 6:30 and we've not reached a verdict, that it might be best to go on home and resume another day . . . . With that go back to the jury room, call any family members if you need to, and then shut the phones down.
After the jury exited the courtroom, the trial judge asked counsel if they had anything to say about the instructions given. Defendant's counsel answered, "In complete agreement, Your Honor." At 6:20 p.m., the trial judge called the jury back to the courtroom to respond to their request to see evidence and to address stopping work for the day. The foreperson informed the court that "it might be best to resume Monday morning." The trial court thanked the jury for their diligence and their work. In dismissing them, the trial judge stated, "Our goal is not to do it quickly, but to do it correctly, whatever that is."
The jury resumed its deliberations on Monday morning. When it was time for the lunch recess, the trial court asked the jury if they wanted to take a break or continue to deliberate. The foreperson indicated that they wanted to continue to deliberate. The trial judge stated that he would allow them to continue to deliberate if they were all right, reminded the jurors not to "surrender their honest convictions as to the weight or effect of the evidence solely . . . for the mere purpose of returning a verdict[,]" and thanked the jurors. After the jurors went back to the jury room, the trial judge asked counsel if they had anything to say about the procedure. Defendant's counsel responded, "Nothing from the defense, Your Honor." The trial judge subsequently called the jury into the courtroom and told them they were going to take an hour lunch break. The trial judge asked the foreperson if he believed the jury was progressing toward reaching a verdict. The foreperson replied that he believed they were. The jury was shown out of the courtroom, and the trial judge asked counsel if there was anything in regard to the instructions given the jury. Defendant's counsel responded, "Nothing, Your Honor."
The jury continued its deliberations following the lunch break. The trial court later called the jury into the courtroom and asked the foreperson if they were making progress. The foreperson responded that they were. The trial court asked if some sort of voting process had taken place. The foreperson responded that it had. The trial court then stated:
And it would be helpful for me to have  you're not to discuss what goes on in the jury room, but for my assistance in knowing about the progress, it would be helpful to know two numbers. I'm assuming there are two numbers. Not relating those numbers to a verdict, but just giving me two numbers, are you able to give me two numbers to reflect the voting of the jury?
The foreperson responded, "Nine and three, Your Honor." The trial court thanked the foreperson and asked if they wanted a break or wanted to continue to deliberate. The foreperson stated that they wanted to continue. The trial court noted that there were some limitations that day and for the rest of the week. He asked that the jury continue to deliberate and when they had reached a verdict to let the bailiff know. The trial court thanked the jury again. At that point, the trial court observed that a juror had a question. The judge allowed her to ask the question provided she did not reveal anything that had been said in the jury room. The juror asked what would happen if they could not reach a decision that day. The judge responded that he was inclined to suspend deliberations sometime that afternoon and resume the following Monday. The week had been set aside as a week with no courts to allow for educational and training conferences, and the trial judge was scheduled to teach a course the next day. The trial court concluded by stating:
Now, Members of the Jury, I do not want that to influence your decision-making process in any way. You should deliberate with a view toward reaching a verdict if you can do it without violating your conscience, without compromising merely to reach a verdict. You should do everything possible, but that must be your decision. We will do what we have to do and resume when we can.
The trial court asked if there were any other questions. The trial court thanked them all again, and the jury was led back to the courtroom. The trial court asked counsel if they had anything to say about the conversation the trial court had with the jury. Defendant's counsel responded, "Nothing from the defense, Your Honor." At 3:44 p.m., the jury returned to the courtroom and indicated that they had reached a unanimous verdict.
Defendant first argues that the trial court's inquiry into the jury's numerical division impermissibly coerced a verdict. Defendant did not object to the trial court's instructions, and therefore, asks this Court to review for plain error. Plain error arises when the error is "'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]'" State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)(quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir. 1982), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d. 513 (1982)).
Our Supreme Court has held that an inquiry into a jury division, without asking which votes were for conviction or acquittal, is not inherently coercive. State v. Nobles, 350 N.C. at 510, 515 S.E.2d at 901. In determining whether a trial court's actions are coercive, an appellate court must look to the totality of the circumstances. State v. Beaver, 322 N.C. 462, 464, 368 S.E.2d 607, 608 (1988). Some factors to be considered include: the length of time the jury had been deliberating, Beaver, 322 N.C. at 465, 368 S.E.2d at 609; the number of times the trial court inquired into the jury's numerical division, id.; whether the trial court inquired as to whether the majority of the votes were in favor of guilt or innocence, id. at 464, 368 S.E.2d at 608; whether the trial court was respectful to the jury or conveyed to the jury that it was irritated at the jury's lack of progress, id.; whether the trial court inquired into the jury's numerical division merely for purposes of scheduling recesses, State v. Fowler, 312 N.C. 304, 309, 322 S.E.2d 389, 392 (1984); and whether the trial court was merely trying to determine whether the jury had made progress toward reaching a verdict. Id.
In the instant case, the trial court did not inquire as to whether the majority of the jury was in favor of guilt or innocence. In fact, the trial court specifically asked the jury foreman not to provide this information to the trial court. Further, the trial court inquired into the numerical division only once and did not express any irritation or dissatisfaction with the jury deliberations. We therefore find no coercion and no error in the trial judge's inquiry.
Defendant also argues that the trial court's actions in informing the jury about the scheduling issues for that week was "inherently coercive[.]" We review for plain error due to defendant's failure to object to the instructions. Again, this Court must consider the totality of the circumstances in determining whether these instructions were coercive. Beaver, 332 N.C. at 464, 368 S.E.2d at 608.
In the instant case, the trial court informed the jury of the scheduling issues due to a direct question from a juror. Furthermore, after explaining the scheduling issues, the trial court specifically instructed the jury that the scheduling issues should not influence their decision-making process and that the jurors should not compromise their convictions merely to reach a verdict. Under the totality of the circumstances, we conclude the trial court did not coerce a verdict.
These arguments are without merit.
NO ERROR.
Judges HUNTER, ROBERT C. and JACKSON concur.
Report per Rule 30(e).